STOUDEMIRE v STOUDEMIRE

Docket No. 222896. Submitted November 5, 2001, at Detroit. Decided November 16, 2001, at 9:05 A.M.

Robert Stoudemire brought an action in the Oakland Circuit Court, Family Division, seeking a divorce from Dale Stoudemire and also petitioned the Wayne County Probate Court for an accounting by the defendant, who had served as the plaintiff's guardian and conservator of his estate after the plaintiff was incapacitated by a closed head injury when the vehicle he was driving was struck by a disposal company truck. The defendant, in her representative capacity and on her own behalf, had brought a personal injury action against the disposal company and, without first seeking the approval of the probate court, had stipulated the entry of a consent judgment in the personal injury action. Under the consent judgment, the defendant had received a damages award for loss of consortium that exceeded the damages award to the plaintiff for his injury. The circuit court held the divorce action in abeyance pending the resolution of the accounting in the probate court. The probate court reduced the damages award for loss of consortium and imposed a surcharge on the defendant. The probate court also determined that the defendant was not entitled to any fiduciary fees for assisting the plaintiff in pursuing the personal injury claim and that the defendant was not entitled to fees for caretaking duties. The probate court awarded the net balance of the proceeds from the personal injury action to the plaintiff. No allocation was made for pain or suffering or lost wages in either the personal injury action or the accounting proceeding in the probate court. No appeal was taken from the personal injury action settlement or the accounting proceeding. The plaintiff moved for partial summary disposition of the divorce action, arguing that the probate court's findings were res judicata regarding the separate assets of the parties and the defendant's surcharge as conservator of the plaintiff's estate. The circuit court granted the motion, ruling that the probate court's findings regarding the distribution of the settlement proceeds and the accounting of the defendant as conservator were res judicata with respect to those issues. However, the circuit court also held that the probate court lacked jurisdiction to apportion the marital estate or to determine whether the separate estate of either

party should be invaded in the context of the divorce proceedings, either for an additional award of property or for spousal support. The circuit court ordered a trial on the issue of division of joint property, including the marital home, its contents, a pension plan, and the issue whether the parties' separate property should be invaded. Following the trial, the circuit court entered a judgment whose provisions regarding division of property prompted an appeal by the defendant and a cross appeal by the plaintiff.

The Court of Appeals *held*:

1. The circuit court did not err in granting partial summary disposition in favor of the plaintiff on the basis of its conclusion that res judicata applied with regard to the issue of the parties' separate property arising from the settlement of the personal injury action, as decided in the accounting proceeding in the probate court. Res judicata bars relitigation of claims that are based on the same transaction or events as a prior suit. Res judicata applies when the prior action was decided on the merits, the decree in the prior decision was a final decision, both actions involved the same parties or their privies, and the matter in the second case was or could have been resolved in the first.

2. The circuit court did not clearly err in finding that neither party violated the terms of the mutual restraining order relative to the dissipation of assets during the pendency of the divorce action and that neither party would be required to return assets to the marital estate.

3. The circuit court did not clearly err in relying on the testimony of the plaintiff's expert rather than that of the defendant's expert with regard to apportionment of plaintiff's damages award between lost wages, which the circuit court divided equally between the parties, and pain and suffering, which the circuit court awarded to the plaintiff as his separate property. The testimony of the plaintiff's expert was based on more credible calculations than those used by the defendant's expert.

4. The circuit court, under the circumstances of this case, fairly and equitably distributed the marital assets and awarded alimony to the defendant.

5. The circuit court did not abuse its discretion in refusing to award the defendant her witness fees and no more than $5,000 of her attorney fees.

Affirmed.

1. JUDGMENTS — RES JUDICATA.

Res judicata bars the relitigation of claims that are based on the same transaction or events as a prior suit and applies when the prior

action was decided on the merits, the decree in the prior action was a final decision, both actions involved the same parties or their privies, and the matter in the second case was or could have been resolved in the first.

2. DIVORCE — CIRCUIT COURTS — FINDINGS OF FACT — DISPOSITIONAL RULINGS — APPEAL.

A circuit court's findings of fact in a divorce action are to be upheld on appeal unless they are clearly erroneous, and the court's dispositional rulings should be affirmed on appeal unless the appellate court is left with the firm conviction that the rulings were inequitable.

3. DIVORCE — CIRCUIT COURTS — VALUATION OF ASSETS — DIVERGENT EXPERT OPINION.

A circuit court has great latitude in arriving at a final figure in cases where marital assets are valued between divergent estimates given by expert witnesses.

4. DIVORCE — PROPERTY DIVISION — RIGHT OF ACTION — PERSONAL INJURY AWARD.

A right of action or an award of damages for pain and suffering in a personal injury action is the injured party's separate property; it is, however, at the circuit court's discretion, available for distribution as a marital asset in a divorce proceeding in order to make a fair and equitable division of property.

5. DIVORCE — COSTS — ATTORNEY FEES.

Attorney fees and costs incurred by a party in a divorce action are not recoverable as a matter of right, but are to be awarded, in the discretion of the court, only where necessary to preserve the party's ability to carry on or defend the action (MCL 552.13).

*Chiamp & Associates, P.C.* (by *Carole L. Chiamp*) and *Hickey & Cianciolo, P.C.* (by *Margaret A. Cotant*), for the plaintiff.

*Elaine R. Carlis*, for the defendant.

Before: GRIFFIN, P.J., and METER and K. F. KELLY, JJ.

GRIFFIN, P.J. Defendant wife, Dale Stoudemire, appeals and plaintiff husband, Robert Stoudemire, cross appeals a judgment of divorce entered by the Oakland Circuit Court, Family Division. We affirm.

I

The parties were married in 1983 in Detroit. Plaintiff was forty-one years old at the time of the marriage and was employed as a laborer at Chrysler Corporation. Defendant, who was twenty-eight years old when the parties married, was employed as a nursing assistant. The parties had no biological children together.[1] After the marriage and until 1991, both parties worked and contributed to the payment of marital expenses. In September 1991, the plaintiff was driving his vehicle when it was struck by a disposal truck, causing plaintiff to suffer a severe closed head injury requiring brain surgery. Plaintiff's recovery was prolonged; defendant quit her job to assist in his recovery. Defendant obtained training in physical therapy in order to aid her husband, and she took care of his daily needs.

In February 1992, defendant was appointed plaintiff's guardian and conservator of his estate by Judge Martin Maher of the Wayne County Probate Court. A lawsuit was then filed against the disposal company in the Wayne Circuit Court (by defendant individually and as guardian and conservator) and the case was settled in June 1993 for $3.5 million. In her capacity as conservator, defendant stipulated a Wayne Circuit Court order that awarded her $1,330,492.88 for her loss of consortium claim, awarded a one-third attorney fee of approximately $1,166,666 to her personal injury attorney, and awarded plaintiff $1,000,000 in a structured settlement for his severe closed head

---

[1] Plaintiff has three adult children from his first marriage and defendant testified that, although this was her first marriage, she was the biological mother of two adult children.

injury. Contrary to the directions of Judge Maher, defendant did not obtain the approval of the Wayne County Probate Court before acceptance of the settlement.

A spending spree followed and the parties used the settlement monies to purchase expensive consumer items such as cars, jewelry, furs, and clothing. Defendant used a portion of the settlement proceeds to make a large "loan" to her church without plaintiff's consent or authorization. Although both parties participated in spending, plaintiff remained legally incapacitated until February 1995, when the probate court issued an order restoring his competency. Defendant continued to act as conservator until that time. Plaintiff evidently engaged in extramarital affairs during this period.

In March 1995, plaintiff filed for divorce in the Oakland Circuit Court and also filed an action in the Wayne County Probate Court seeking an accounting by defendant as conservator of his estate. The divorce action was held in abeyance by the circuit court until an accurate determination of the marital assets could be made. The probate court case was litigated over the course of the next 3½ years, resulting in findings of fact and conclusions of law, as well as a final order issued by Judge Maher on December 17, 1998. The probate court found in pertinent part that defendant, as guardian and conservator, had breached her fiduciary duty to plaintiff as ward, that the settlement entered into by defendant as guardian and conservator "shocked the conscience" of the probate court, and that if defendant had proceeded properly in the personal injury action and sought damages for a loss of consortium claim, the proper measure of her dam-

ages for that claim would have been twenty-five percent of the total settlement award. The probate court accordingly reduced the award for loss of consortium to $557,623 and imposed a surcharge. The probate court further held that defendant was not entitled to any fiduciary fees for assisting plaintiff in pursuing his claim or fees for performance of caretaking duties. The net balance of the personal injury proceeds were awarded to plaintiff. No allocation was made for pain or suffering or lost wages in either the personal injury action or the probate litigation. Neither the circuit court personal injury settlement nor the probate court decision was ever appealed.

In May 1999, plaintiff brought a motion for partial summary disposition pursuant to MCR 2.116(C)(10) in the divorce action, alleging that Judge Maher's findings were res judicata regarding the separate assets of the parties and the issues regarding defendant's surcharge as conservator of plaintiff's estate. In June 1999, Judge Linda S. Hallmark of the circuit court family division granted plaintiff's motion, ruling that the probate court's findings regarding the distribution of the settlement proceeds and the accountings of the conservator were res judicata with respect to those issues. However, the court also held that the probate court lacked jurisdiction to apportion the marital estate or to determine whether the separate estate of either party should be invaded in the context of the divorce proceedings, either for an additional award of property or for spousal support. The parties were ordered to proceed to trial on the issue of division of joint property, including the marital home, its contents, a pension plan, and the issue whether the parties' separate property should be invaded.

A five-day trial ensued in June 1999. The circuit court found that both parties were equally at fault regarding the marital breakdown: plaintiff's affairs contributed to the breakdown of the marriage, and defendant's mishandling of the conservatorship also served to destroy the relationship between the parties. The primary issue in dispute was the distribution of proceeds from the personal injury action filed during the marriage. The circuit court determined that plaintiff had separate property consisting of proceeds for his pain and suffering, defendant had separate property consisting of proceeds for loss of consortium, and the lost wages portion of the settlement, determined to be approximately $17,000, was split evenly between the parties. In her twenty-eight page written opinion and order, Judge Hallmark made extensive findings regarding the circumstances of the marriage and the division of other assets. A judgment of divorce was entered on September 22, 1999.

II

On appeal, defendant first contends that the trial court erred in granting partial summary disposition in favor of plaintiff on the basis of its conclusion that res judicata applied with regard to the probate court judgment. Defendant maintains that the subject matter of the probate court proceedings was different from, and therefore not conclusive of, the issues raised in the divorce action; the probate court dealt only with a fiduciary's duties to the ward, and the breach thereof, and not with matters of divorce. Citing *York v Wayne Co Sheriff*, 157 Mich App 417, 424-425; 403 NW2d 152 (1987), defendant further argues that the doctrine of res judicata is inapplicable where

one action is brought in a party's representative capacity and another, subsequent action is brought in a party's individual right.

This Court reviews a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(7)[2] de novo to determine whether the moving party was entitled to judgment as a matter of law. *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 395; 573 NW2d 336 (1997). The applicability of the doctrine of res judicata is a question of law that is also reviewed de novo. *Ditmore v Michalik*, 244 Mich App 569, 574; 625 NW2d 462 (2001).

Judge Hallmark granted plaintiff's motion for partial summary disposition, holding, in pertinent part, that (1) the findings of fact and conclusions of law in the Wayne County Probate Court's final order of December 17, 1998, were binding on the parties as res judicata, (2) the property awarded to plaintiff by the probate court judgment was his sole and separate property, the property awarded to defendant was her sole and separate property, and the joint and separate property was part of the marital estate, (3) the parties were to proceed to trial on the division of joint property, including the marital home, its contents, and a Chrysler pension plan, and (4) the parties were to proceed to trial to determine the necessity of invading the separate property under MCL 552.23, including distribution of the future lost wages portion of the

---

[2] Plaintiff moved for partial summary disposition pursuant to MCR 2.116(C)(10), not MCR 2.116(C)(7), in claiming that res judicata was the proper ground in support of its motion. However, an order granting summary disposition under the wrong subrule may be reviewed under the correct rule. *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 395, n 3; 573 NW2d 336 (1997).

personal injury award of plaintiff and spousal support. In her subsequent opinion and order resolving the divorce action, Judge Hallmark further explained with regard to plaintiff's motion for partial summary disposition:

Counsel for plaintiff brought a Motion for Partial Summary Disposition in the divorce action on May 26, 1999, urging this court to adopt Judge Maher's findings as res judicata regarding the separate assets of the parties and the issues regarding surcharge of Mrs. Stoudemire as conservator of Mr. Stoudemire's estate. This court determined that Judge Maher's findings regarding the distribution of the settlement proceeds and the accountings of the conservator were res judicata as to those issues. See *Howell v Vito's Trucking & Excavating*, 386 Mich 37; 191 NW2d 313 (1971) . . . . The Probate Judge lacked jurisdiction, however, to apportion the marital estate or to determine whether the sole and separate property of either party should be invaded pursuant to MCLA 552.23 or MCLA 552.401. See *McCormick v McCormick*, 221 Mich App 672, [681]; 562 NW2d 504 (1997). The issue of future spousal support was also reserved for decision by the Family Division Judge.

\*    \*    \*

Neither the June 17, 1993 Circuit Court settlement or [sic] Judge Maher's December 17, 1998 decision in the probate action were [sic] ever appealed.

Judge Maher was the only judge to hear and carefully review the award of the personal injury claim. He had jurisdiction to determine the issues relating to the conservatorship, including the amount of property each party should have been awarded in the personal injury action and whether Mrs. Stoudemire breached her fiduciary duty as conservator in approving the personal injury settlement. He also had jurisdiction to decide whether expenditures made by the conservator were allowed and whether a surcharge should be imposed. This court has ruled pursuant to an order dated June 17, 1999 that Judge Maher's decisions

regarding the appropriation of the personal injury award and the separate property awarded to each of the parties as personal injury proceeds is res judicata. It is, however, for this court to determine the marital estate of the parties and whether the separate estate of either party must be invaded in the context of the divorce proceedings either for an additional award of property (MCLA 552.23 or MCLA 552.401) or for spousal support.

A review of the record leads to the conclusion that the trial court did not err in granting partial summary disposition in favor of plaintiff. Res judicata bars relitigation of claims that are based on the same transaction or events as a prior suit. *Ditmore, supra* at 577. Res judicata applies when (1) the prior action was decided on the merits, (2) the decree in the prior decision was a final decision, (3) both actions involved the same parties or their privies, and (4) the matter in the second case was or could have been resolved in the first. *Id.* On the basis of these principles and for the sound reasons stated by the trial court, Judge Hallmark was correct in determining that the prior judgment rendered in the accounting action brought by plaintiff against defendant for her breach of duties as conservator of his estate is res judicata regarding the issues decided. While the probate court lacked authority to apportion the marital estate, *McCormick v McCormick*, 221 Mich App 672, 681; 562 NW2d 504 (1997), it was within its authority to determine the separate assets of the parties arising out of the personal injury settlement. Moreover, contrary to defendant's argument, the fact that she was acting in a representative capacity in the probate court action does not preclude the operation of res judicata in the divorce action. As recognized by the trial court in its citation of *Howell v Vito's Trucking*

& *Excavating*, 386 Mich 37, 45; 191 NW2d 313 (1971), where a party to one action in his individual capacity and to another action in his representative capacity is in each case asserting or protecting his individual rights, res judicata may still be applied. See also *York*, *supra* at 424-425. In the probate court accounting action, in light of defendant's very large loss of consortium award, it is readily apparent that defendant was protecting and defending the challenge to her individual rights. Thus, res judicata applies.

Finally, in granting plaintiff's motion for *partial* summary disposition, the trial court gave plaintiff precisely the relief he requested. Thus, his current contention in his cross appeal that the trial court did not go far enough and should have ruled that res judicata applied to all matters decided by the probate court is disingenuous and has no basis in the record. As the trial court astutely noted, the probate court did not have jurisdiction to delve into the divorce issues. *McCormick*, *supra*. Plaintiff's argument is also based on the faulty presumption that all the settlement proceeds awarded to him by the probate court represented damages for pain and suffering, not lost wages. See text, part IV.

III

Defendant next contends that the trial court abused its discretion by disregarding the actions of plaintiff, who allegedly dissipated assets during the pendency of the divorce action contrary to the terms of a mutual restraining order. Defendant claims that in addition to the unauthorized spending of $32,000 on attorney fees, plaintiff also violated the mutual restraining order by spending monies from certain

accounts, totaling over $220,000. Defendant maintains that the trial court abused its discretion in refusing to forfeit any of these assets wrongfully taken and concealed by plaintiff. We disagree.

The trial court addressed this issue in its opinion, stating:

> A lump sum payment of $100,000 on November 16, 1996, was received by Mr. Stoudemire during the pendency of this action. Mr. Stoudemire testified that $32,000 was paid to his attorney for fees and the balance was used for living expenses and to attend court appearances from his home in Alabama. Mrs. Stoudemire has argued that the $32,000 expenditure for attorney fees was in violation of the court's mutual marital asset restraining order dated April 6, 1995. Mr. Stoudemire argued that the expenditure for attorney fees was made "in the ordinary course of business" and does not constitute a violation of the restraining order. Mrs. Stoudemire is also seeking reimbursement to the estate for the . . . amounts [totaling approximately $220,000]:
>
> *     *     *
>
> The court recognizes that this action was filed on March 22, 1995. Both parties have spent substantial assets since that time for which they have not accounted. Mr. Stoudemire was obligated to pay substantial spousal support and had expenses for travel and attorney fees in connection with the litigation. Given the long period of separation and ongoing litigation, the court finds that neither party violated the Mutual Restraining Order and neither party will be required to return assets to the estate.

The standard of review in divorce proceedings has been stated in *Sands v Sands*, 442 Mich 30, 34; 497 NW2d 493 (1993):

> In deciding a divorce action, the circuit court must make findings of fact and dispositional rulings. On appeal, the factual findings are to be upheld unless they are clearly erro-

neous. *Beason v Beason*, 435 Mich 791; 460 NW2d 207 (1990). A dispositional ruling, however, "should be affirmed unless the appellate court is left with the firm conviction that [it] was inequitable." *Sparks v Sparks*, 440 Mich 141, 152; 485 NW2d 893 (1992).

See also *McDougal v McDougal*, 451 Mich 80, 87; 545 NW2d 357 (1996).

In the instant case, which is overflowing with evidence of unbridled and unaccounted for spending by both parties, the trial court did not clearly err in finding that neither party violated the mutual restraining order and that neither party would be required to return assets to the estate. This was a fair and equitable response to the circumstances of the case. *Sands, supra.*

IV

Defendant next maintains that the trial court abused its discretion in disregarding testimony from defendant's expert concerning economic damages attributed to the structured personal injury settlement and the valuation of plaintiff's pension. Defendant's expert testified that plaintiff's annuity had a present value of over $1 million and represented an economic component of the settlement and should be included in the marital assets to be divided between the parties. The trial court nonetheless ruled that the structured settlement was the sole and separate property of plaintiff and only the lost wages portion of the settlement would be subject to distribution.

Our review of the record indicates that the trial court considered this issue in detail, weighed the competing testimony of the parties' experts, and

rejected defendant's expert's testimony that all of plaintiff's settlement proceeds represented economic losses as opposed to pain and suffering. Instead, the court expressly adopted the reasoning of plaintiff's expert, stating in pertinent part:

> In making a determination regarding separate property, it is necessary to establish whether the personal injury proceeds paid to Mr. Stoudemire represented compensation for pain and suffering, lost wages or both. *Bywater v Bywater*, 128 Mich App 396; 340 NW2d 102 (1983). Neither the Wayne County Circuit Court nor the Wayne County Probate Court orders set forth any allocation of damages regarding Mrs. Stoudemire's portion of the personal injury settlement . . . .

> \* \* \*

> While it is impossible to know what analysis was used in reaching the settlement of the personal injury action, it is clear that at the time of settlement negotiations, Mr. Stoudemire was receiving long term compensation for lost wages and was permanently disabled. It was known that he had sufficient years of service to retire at age 55 and begin receiving his pension. His injuries were extremely severe and justified a considerable award for pain and suffering. We adopt the reasoning set forth by Mr. Kabacinski [plaintiff's expert] which based the lost wage award on the actual circumstances and find that the lost wage portion of the damage award was in the amount of $17,012 as of the date of filing of the divorce action. Each party is entitled to one half of the lost wages in the amount of $8,506.

> The balance of Mr. Stoudemire's personal injury award is attributed to pain and suffering. It is, therefore, Mr. Stoudemire's separate property.

Judge Hallmark did not clearly err in her findings of fact with regard to the division of the personal injury settlement proceeds. In cases where marital assets are valued between divergent estimates given by expert witnesses, the trial court has great latitude

in arriving at a final figure. *Pelton v Pelton*, 167 Mich App 22, 26; 421 NW2d 560 (1988). The trial court has the best opportunity to view the demeanor of the witnesses and weigh their credibility. *Id.* Moreover, as Judge Hallmark recognized, while a right of action or an award of damages for pain and suffering in a personal injury action is the injured party's separate property, it is, at the trial court's discretion, available for distribution as a marital asset in a divorce proceeding in order to make a fair and equitable division of property. *Bywater v Bywater*, 128 Mich App 396, 398-400; 340 NW2d 102 (1983). See also *Lee v Lee*, 191 Mich App 73, 79; 477 NW2d 429 (1991).

In this instance, defendant's expert testified that in light of plaintiff's income of $41,372 in 1991 and using a cost of living adjustment [COLA] factor of four percent a year to age sixty-five, all of plaintiff's settlement proceeds represented economic losses as opposed to pain and suffering. He also calculated a factor for the loss of plaintiff's "household services" resulting from his disability. He calculated damages on the basis of plaintiff's capacity to earn income up to the maximum retirement age even if the individual did not intend to work the maximum number of years.

By contrast, plaintiff's expert stated that his calculation for lost wages was based on plaintiff's actual 1991 income of $30,327. He did not include a factor for household services because these generally decrease over time, and he used a three percent rather than four percent inflation factor. He also used a retirement age of fifty-five instead of sixty-five because plaintiff stated that he intended to retire at age fifty-five even before the accident and did in fact

retire at age fifty-five after the accident. He likewise considered that plaintiff received lost wages as an insurance benefit from September 1991 to August 1993, his actual retirement date. Using the divorce filing date as the valuation date, plaintiff's expert calculated plaintiff's lost wages at $17,012.

A review of the record leads to the conclusion that the trial court did not clearly err in accepting and adopting the expert testimony of plaintiff's witness, which was based on more credible calculations than those of defendant's expert. *Zecchin v Zecchin*, 149 Mich App 723, 730-732; 386 NW2d 652 (1986).

v

Defendant next contends that the property settlement devised by the trial court constituted neither a fair nor an equitable division of assets in light of all the circumstances. Defendant complains that the trial court awarded a substantial portion of the marital assets to plaintiff, ignoring plaintiff's fault in causing the divorce and defendant's limited employment skills and abilities. Defendant maintains that although she was awarded the marital home, the court also gave her the mortgage note and the attendant maintenance and upkeep responsibilities and, in light of her needs and plaintiff's more ample monetary resources, her monthly support should have been $3,500 rather than the $2,000 monthly spousal support awarded by the court.

Conversely, in his cross appeal, plaintiff argues that the trial court's award of spousal support in gross was actually an unjustified award of a portion of plaintiff's separate property to defendant, rather than

an award of spousal support. Plaintiff contends this was a short-term marriage, and defendant had already received, during the pendency of these proceedings, four years of spousal support at a rate of $3,500 a month, as well as a $10,000 advance on the property division. Thus, according to plaintiff, the trial court did not give sufficient justification for the invasion of plaintiff's separate assets.

Addressing these opposing arguments, our review of the record indicates that in her thorough opinion, the trial judge considered the appropriate factors pursuant to *Sparks, supra* at 159-160, in dividing the assets of the parties. We conclude that the distribution of marital assets is fair and equitable under the circumstances. It is undisputed that defendant, in her capacity as guardian and conservator, mishandled the proceeds from the personal injury settlement. Indeed, the trial court, finding that defendant is still capable of employment, also noted that "Mrs. Stoudemire was awarded $600,000, most of which has been spent or awarded by the Wayne County Probate Court in the form of attorney fees and surcharges. Mrs. Stoudemire must take full responsibility for the dissipation of her assets." Defendant still received sufficient assets and funds, including $2,000 monthly support, the marital home, one-half of the Chrysler pension, one-half of the Chrysler stock, a loan receivable from her church, and other miscellaneous sums. We therefore find defendant's complaints regarding the distribution of assets to be without merit.

Plaintiff's related arguments raised in his cross appeal are likewise invalidated by Judge Hallmark's well-written opinion. The judge aptly noted that defendant had to become reestablished in the job

market and in order to do so, she would require ongoing counseling and training to obtain job skills. The trial court held:

> In order to meet her monthly expenses while she reenters the job market, the court will award her $2,000 per month for a period of ten years, commencing on the date of judgment. This amount is nonmodifiable and should terminate upon Mrs. Stoudemire's death or remarriage . . . .
>
> Mr. Stoudemire is well able to afford the award of spousal support. Given the significant sacrifices made by Mrs. Stoudemire in the care of her husband, the award of spousal support is reasonable and necessary. It will enable her to meet her living expenses and resume employment. The court finds that the property awarded to Mrs. Stoudemire will be insufficient for her support and maintenance while she becomes reemployed. The award of spousal support will adequately provide for Mrs. Stoudemire so that a further invasion of Mr. Stoudemire's separate property will not be required pursuant to MCL 552.23 or 552.40.

Given the fact that defendant was awarded fewer liquid assets than plaintiff, for legitimate reasons noted by the trial court, the award of monthly support in the amount of $2,000 for ten years is reasonable and equitable, and the trial court did not err in this regard.

Plaintiff's tangential argument raised in his cross appeal—that the trial court erred in awarding all the equity in the marital home to defendant, failed to give plaintiff credit for improvements made to the home, and thereby unjustifiably awarded eighty percent of the marital estate to defendant—is for similar reasons without merit. Although defendant was awarded the marital home, valued by the court at $65,000, defen-

dant also assumed responsibility for the mortgage. Judge Hallmark explained in pertinent part:

> The court finds that the value of the marital home is $65,069 ($80,500 [stipulated value]$—15,431 [mortgage balance]). No credit is given to Mr. Stoudemire for the improvements. Although they were made from his money during the pendency of the conservatorship, they served to increase the value of the joint marital asset. Further, both parties had the use and enjoyment of the home prior to their move to Southfield.
>
> The court finds that the marital home should be awarded to Mrs. Stoudemire. She is currently living in the home with her "grandchildren" Danielle and Denzel. She has paid the mortgage and taxes on the property since 1995. Further, Mr. Stoudemire is in a better position than Mrs. Stoudemire to maintain alternative housing at this time. Although Mr. Stoudemire has paid spousal support, he has not lived in the marital home or contributed directly to its maintenance or upkeep since 1994.

Plaintiff was awarded the Alabama property where he was living during the pendency of the divorce proceedings. His claim that defendant was unfairly awarded eighty percent of the marital estate does not take into account the distribution of property as a whole. The trial court's distribution of the marital estate was fair and equitable. *Sparks, supra.*

VI

Defendant lastly argues the trial court abused its discretion in refusing to award her expert fees and more than $5,000 in attorney fees. Defendant states that she should not be required to pay her attorney fees and expert fees out of her spousal support or nominal property settlement. We disagree.

MCL 552.13 provides for attorney fees in actions for divorce or separation. This Court reviews for abuse of discretion a trial court's decision to award attorney fees and expert witness fees. *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 466; 633 NW2d 418 (2001); *Kosch v Kosch*, 233 Mich App 346, 354; 592 NW2d 434 (1999). Attorney fees in a divorce action are not recoverable as of right. *Kurz v Kurz*, 178 Mich App 284, 297; 443 NW2d 782 (1989). Attorney fees and costs are to be awarded only where necessary to preserve the party's ability to carry on or defend the action. *Id.*

The trial court in the instant case ruled:

> Due to the protracted nature of these proceedings, each party has incurred substantial attorney fees. Mrs. Stoudemire is awarded fewer liquid assets than Mr. Stoudemire. He has the ability to contribute to Mrs. Stoudemire's attorney fees and the court will order than [sic] he make a contribution of $5000 toward her fees. Each party will then be responsible for the balance of their own attorney fees.

A review of the record indicates no abuse of discretion on the part of Judge Hallmark in the award of attorney fees. Although the trial court did not address the issue of expert witness fees, it appears that neither party was awarded funds for this purpose. Such a result does not constitute an abuse of discretion under the described circumstances.

VII

In sum, the trial court did not err in granting partial summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(7). The prior judgment rendered in the

probate court accounting action brought by plaintiff against defendant for her breach of duties as conservator of his estate is res judicata regarding the issues decided therein. While the probate court lacked authority to apportion the marital estate, *McCormick*, *supra*, it did have authority to determine the separate assets of the parties arising out of the personal injury settlement.

Having considered the parties' respective claims raised in this appeal, we conclude that the judgment of divorce entered by the circuit court should be affirmed without modification. Defendant's appellate claims, and the issues raised by plaintiff in his cross appeal, lack merit. In the context of this acrimonious divorce, the trial judge's findings of fact incorporated in her comprehensive opinion are not clearly erroneous and the division of property and award of spousal support are fair and equitable under *Sparks*, *supra*.

Affirmed.