# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF ARTHUR DICKINSON.

---

LESLIE MCMAHON, Individually and as
Personal Representative of the ESTATE OF
ARTHUR DICKINSON, and SCOTT
DICKINSON, Individually,

        Plaintiffs-Appellants,

v

PAUL MONICATTI,

        Defendant-Appellee,

and

LAWRENCE S. FLAGGMAN, and LAWRENCE
S. FLAGGMAN, PLLC,

        Defendants

UNPUBLISHED
July 19, 2018

No. 339212
Oakland Probate Court
LC No. 16-373467-CZ

---

Before: BORRELLO, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Plaintiffs appeal by right the portion of the probate court's order granting summary disposition in favor of defendant Paul Monicatti[1] under MCR 2.116(C)(7) (claim barred by res

---

[1] Plaintiffs do not challenge the probate court's grant of summary disposition in favor of defendants Lawrence S. Flaggman and Lawrence S. Flaggman, PLLC. Those defendants represented Arnelda Dickerson in 2014 and prepared certain documents at issue in the underlying litigation.

-1-

judicata) and MCR 2.116(C)(8) (failure to state a claim upon which relief may be granted) and awarding Monicatti attorney fees and costs. We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a family dispute between (1) two of Arthur Dickinson's children, plaintiffs Leslie McMahon and Scott Dickinson, and (2) Arthur's widow, Arnelda Dickerson, and his remaining child, Craig Dickerson.[2] Monicatti is the former successor trustee of the Arthur W. Dickinson Living Trust (established 1987) (the trust) that was part of Arthur's estate plan. Boiled down to its essentials, plaintiffs believe that Arnelda and Monicatti conspired to remove assets from Arthur's estate (the estate) before he died by having Monicatti obtain a durable power of attorney from Arthur, which Monicatti used to amend the trust to remove McMahon as trustee and replace her with Monicatti as trustee, at which point Monicatti conveyed trust property to Arthur and Arnelda as tenants by the entirety to ensure that Arnelda would receive the property after Arthur's death.

Significant litigation concerning Arthur's estate occurred both before and after his death. McMahon filed a petition and initiated a trust proceeding in the probate court in 2014 (the trust case), seeking to have the trust amended to declare McMahon (rather than Monicatti) to be acting trustee, and to compel Arnelda to return trust assets; Scott participated in the trust case as an interested party. McMahon also initiated a conservatorship proceeding in 2014 (the conservatorship case). Arthur died on November 23, 2014. McMahon admitted Arthur's will in a decedent estate proceeding in 2015 (the decedent case). Finally, plaintiffs filed suit against Craig in Oakland Circuit Court in 2015 for issues related to certain accounts of which plaintiffs alleged Arthur had been unduly influenced to make Craig the sole beneficiary (the beneficiary case). Arthur was placed in a conservatorship in September of 2014, three months before his death. The trust case was ultimately settled, apart from certain reserved issues, after mediation via two agreements, a partial mediation settlement agreement dated January 27, 2015, and a settlement agreement dated March 12, 2015 (the Agreement). The probate court entered an order granting McMahon and Scott's motion, over Monicatti's objections, to approve the mediation agreements on April 15, 2015. McMahon's claims in the decedent case were voluntarily dismissed as part of the mediation process. Although he attended the first mediation session while still trustee, by the time of the second mediation session the probate court had replaced Monicatti as trustee with successor trustee Barbara P. Andruccioli, and Monicatti did not attend any further mediation sessions. Monicatti was not a signatory to the settlement agreement.

The Agreement contained the following provisions pertinent to this appeal:

> 3. Leslie McMahon's authority shall be as Personal Representative of the Estate, but she shall promptly turn over any and all funds or property received in her capacity as Personal Representative to the Special Fiduciary. In that

---

[2] Due to their shared surnames, we will refer to certain persons by their first names.

regard, the Personal Representative may assert and prosecute any claims the estate has or may have against Paul Monicatti . . . .

10.     Subject to the foregoing, the **Signatories**, for themselves, their attorneys, heirs, successors and assigns hereby release all claims against one another, the Trust and Estate, that arose at any time up to and including the date of execution of this Agreement, including but not limited to all claims that were raised or could have been raised in this proceeding: . . . however, this release excludes . . . claims against the attorneys identified above in ¶ 3.

The signatories to the Agreement were plaintiffs, Craig, Arnelda, Andruccioli as trustee, and counsel for Scott and Arnelda. The Agreement also contained a provision stating that Monicatti would be presenting a request to the probate court for his fiduciary fees incurred in litigation as trustee prior to his removal, and stating how the fees would be paid if the court approved them. Monicatti subsequently petitioned the probate court for those fees. McMahon and Scott filed a response containing objections to Monicatti's petition.[3] In their response, McMahon and Scott included a lengthy section entitled "Additional Basis for Objections," which detailed their theory that Arnelda and Monicatti had conspired to funnel assets from the estate to Arnelda in contravention of Arthur's wishes, contained numerous factual allegations, and referenced a number of attached documents.

The probate court issued an order on October 30, 2015 granting Monicatti his requested fees. With regard to McMahon and Scott's objections, the probate court stated: "Ms. McMahon raises multiple other objections, however each is an attempt to adjudicate the issues that she and her brother Scott Dickinson compromised as part of the ultimate settlement."

The case against Craig in the Oakland Circuit Court, as well as a claim against Craig from the trust case, were resolved by way of a settlement reached on December 29, 2015.

On November 9, 2016, plaintiffs filed the instant case with the probate court, alleging, with regard to Monicatti, breach of fiduciary duty, legal malpractice, depletion of trust assets, and civil conspiracy (with the other alleged conspirators being Arnelda and Flaggman). In lieu of an answer, defendants moved for summary disposition. Monicatti argued that plaintiffs' claims were, or could have been, resolved in the trust case, and that he was therefore entitled to summary disposition under MCR 2.116(C)(7) because petitioners' claims were barred by res judicata or collateral estoppel.

---

[3] It does not appear that McMahon objected in her role as personal representative of the estate, but rather in her individual capacity only. McMahon filed her petition in the trust case on August 6, 2014. She was appointed personal representative of Arthur's estate on March 4, 2015. She filed her objections to Monicatti's fee petition on September 22, 2015. Yet, the objections did not reference McMahon's role as personal representative, and instead indicated that they were made on behalf of "Petitioner Leslie McMahon and Interested Party Scott Dickinson."

The probate court dispensed with oral argument and issued a written opinion and order granting Monicatti summary disposition as described. The probate court found that the current proceeding against Monicatti shared a common nucleus of facts that involved

> whether from on or about January 1, 2013, Arthur Dickinson was competent to amend his trust and/or change his estate plan to include and/or exclude various family members as well as changing his successor trustee and Power of Attorney and Patient Advocate, and if so, did he do so of his own volition or as a result of undue influence.

The probate court noted that McMahon had moved for summary disposition in the trust case, arguing that Monicatti's acts as successor trustee should be set aside based on the alleged conspiracy with Arnelda described above and Monicatti's transfer of assets out of the trust in furtherance of that conspiracy. The court also noted that Arnelda had alleged in that case that it was McMahon and Scott who had conspired to change Arthur's estate plan against his wishes. The court recognized that the previous cases were all settled, that Monicatti was not a signatory to the settlement, and that the Agreement preserved McMahon's claims as personal representative of the estate against Monicatti; stating that "claims by Arthur's decedent's estate that are independent of those raised in the trust and decedent's estate litigation as it relates to . . . Monicati [sic] . . . survived."

The probate court found that plaintiffs' claims were barred by res judicata. With regard to the breach of fiduciary duty and legal malpractice claims, the court stated that they were "addressed by the court's Opinion and Order of October 30, 2015 in the trust proceeding [the order granting Monicatti his fiduciary fees over McMahon and Scott's 'objections]." With regard to the depletion of trust assets and conspiracy claims, the court stated that these claims "were alleged against Arnelda and "others" in the initial petition in the same trust case" and were "subject to the April 15, 2015 order [the order approving the various settlement agreements and modifications to the trust]." Therefore, the probate court found that the prior actions had been decided on the merits and were based on the same facts or evidence. Finally, the probate court found that the prior actions and the current action involved the same parties, because McMahon had brought trust case (with McMahon bringing the action as "purported successor trustee") Scott had participated as a beneficiary and interested party, and Monicatti had later brought a claim for fiduciary fees in that action (further noting that McMahon did not make a counterclaim but "merely disallowed the claim" and did not appeal the order granting fees). The probate court therefore held that the elements of res judicata were satisfied and granted Monicatti summary disposition "pursuant to MCR 2.116(C)(7) and res judicata, as well as MCR 2.116(C)(8), since the plaintiffs have failed to state a claim upon which relief may be granted."

The probate court then noted that its decision was "appropriate and consonant with the reservation of rights contained in [the Agreement]" because any claim for legal malpractice by the estate would be barred by the statute of limitations. Finally, the court noted that plaintiffs had settled the previous cases, but in pursuing this case had not "tendered back" the benefit of such settlements; the court therefore described the current complaint and amended complaint as "filed in violation of MCR 2.114 and MCL 600.2591," i.e., frivolous, and that Monicatti "is entitled to an award of fees for frivolous filing and shall submit his bill of costs" related to those sanctions.

This appeal followed. At the time of the appeal, an order setting the amount of sanctions had not been entered by the probate court.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(7), as well as the application of the legal doctrine of res judicata. See *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007). In reviewing a (C)(7) motion for summary disposition, a court must consider "all affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties" and accept all well-pleaded allegations in the complaint as true and construe them in a light most favorable to the plaintiff. *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 396-39, 202 Mich App 393, 396-397; 509 NW2d 829 (1993). "The motion should not be granted unless no factual development could provide a basis for recovery." *Id*.

We also review de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(8). See *Radtke v Everett*, 442 Mich 368, 373; 505 NW2d 155 (1993). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone, without reference to other documentary evidence. See *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995). A motion under MCR 2.116(C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law, even accepting the plaintiff's allegations as true, that no factual development could possibly justify a right of recovery. *Abb Paint Finishing, Inc v Nat Union Fire Ins*, 223 Mich App 559, 561; 567 NW2d 456 (1997).

## III. ANALYSIS

Plaintiffs argue that the probate court erred by concluding that their claims against Monicatti were barred by the doctrine of res judicata, by concluding that in any event the estate's legal malpractice claim against Monicatti was barred by the statute of limitations for malpractice actions, and by additionally relying on the "tender back" rule. We agree with the probate court that plaintiffs' claims in their individual capacity are barred, although we find it unnecessary to conduct a res judicata analysis with respect to those claims in light of the release language found in the Agreement. However, we disagree with the probate court regarding claims brought by the estate. We further disagree that either the statute of limitations for malpractice or the "tender back" rule bars those claims.

### A. PETITIONERS' CLAIMS IN THEIR INDIVIDUAL CAPACITY

On appeal, plaintiffs agree with the probate court that the Agreement preserved only the estate's claims against Monicatti.[4] Accepting that unchallenged interpretation, it is clear that the

---

[4] We note that a fair reading of the language of Paragraph 10 of the Agreement would be that it preserves *all* "claims [by the signatories to the Agreement] against the *attorneys* identified above in ¶ 3," (emphasis added) rather than merely the *claims* against those attorneys that are

plaintiffs' claims in their individual capacity in the instant case were released by Paragraph 10 of the Agreement, because their individual claims against Monicatti (if they possessed any) "were raised or could have been raised" in the trust or estate proceeding. Monicatti was the trustee of the trust when McMahon filed the petition that commenced that proceeding and sought to have the trustee's actions invalidated and a new successor trustee appointed. Further, as the probate court noted, McMahon asserted in a motion for partial summary disposition that Monicatti had breached his duty to the trust by conspiring with Arnelda to transfer assets out of the trust, and sought to have those conveyances nullified. These allegations formed the basis of plaintiffs' claims in the current lawsuit. Therefore, the probate court did not err by concluding that any claims asserted by plaintiffs in their individual capacity, such as their claim that Monicatti was statutorily liable to them *as beneficiaries* for the depletion of trust assets, were barred under MCR 2.116(C)(7), although given the language of the release we find it unnecessary to conduct a full res judicata analysis with respect to those claims.

## B. RES JUDICATA

Plaintiffs argue that the probate court erred by concluding that res judicata barred claims by the estate against Monicatti. We agree.

The doctrine of res judicata "relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and encourages reliance on adjudication," *Ditmore v Michalik*, 244 Mich App 569, 576; 625 NW2d 462 (2001). The doctrine bars claims that were, or could have been, raised in a prior action. See *Baraga Co v State Tax Com'n*, 466 Mich 264, 269; 645 NW2d 13 (2002). In order for res judicata to apply to a claim, three prerequisites must be satisfied: (1) a prior decision on the merits that resulted in a final judgment, (2) the claim was, or could have been, resolved in the prior case, and (3) both actions were between the same parties or their privies. *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013); see also *Sloan v Madison Heights*, 425 Mich 288, 295; 389 NW2d 418 (1986). The party asserting res judicata bears the burden of proving the doctrine's applicability. *Id*.

### 1. PRIOR DECISION ON THE MERITS THAT RESULTED IN A FINAL JUDGMENT

The trial court held that the trust case and decedent case[5] were the "prior actions" for res judicata purposes, holding that plaintiffs' claims for breach of fiduciary duty and legal malpractice were addressed by the court's October 30, 2015 order in the trust case granting Monicatti his fiduciary fees, and that "all allegations related to breach of fiduciary duty, depletion of trust assets while trustee and conspiracy with Arnelda Dickinson and related allegations of wrong doing were subject to" its April 15, 2015 order in the trust case approving the settlement agreements. (Op, 15-16). We disagree with the trial court's assessment, inasmuch

---

themselves identified in Paragraph 3, i.e., claims by the estate. Nonetheless, the parties and probate court appear to agree that the Agreement preserved only claims by the estate.

[5] The trust case and decedent case were both subjects of the mediation sessions and the Agreement.

as we conclude that neither case resulted in a "final judgment" for purposes of a res judicata analysis.

The trial court stated in its opinion that McMahon represented, in her motion to have the settlement agreements approved and to modify the trust, that the only issues left unresolved by settlement in the trust case were "(1) Craig's contribution to the legal fees of Leslie and Scott; (2) Craig's ownership of the IRA/USB account(s) and; (3) Mr. Monicatti's legal fees." It is true that the motion contained language stating that the Agreement "resolved all issues raised in the Petition" apart from Monicatti's fiduciary claim and McMahon and Scott's disputes with Craig. However, the motion sought to have the probate court approve the Agreement and an earlier partial settlement agreement. The probate court, in its order approving the settlement agreements, stated in relevant part that "the Settlement Agreement dated March 12, 2015 [is] hereby approved" and "the parties who executed the . . . Settlement Agreement dated March 12, 2015 may effectuate the terms of those agreements pursuant to their terms." As discussed above, the Agreement carved out claims by the estate against Monicatti, as well as the issue of Monicatti's fiduciary fees and McMahon and Scott's disputes with Craig.

Although res judicata does apply to settlements and consent judgments and a court may treat a case resolved by settlement as decided on the merits, see *Clohset v No Name Corp*, 302 Mich App 550, 572; 840 NW2d 375 (2015), see also *Schwartz v Flint*, 187 Mich App 191, 194; 466 NW2d 357 (1991), here the Agreement, and the order approving that Agreement, specifically did not resolve certain issues on the merits, nor did it close the case in its entirety. A settlement may be "final in a res judicata sense as to a part of an action although the litigation continues as to the rest." See 3 Restatement 2d, Judgments, § 13, comment e. An order adjudicating fewer than all the claims or the rights and liabilities fewer than all the parties is generally not a final judgment. See MCR 2.604(A). Further, the parties in this case were ordered to mediation. See MCR 2.410(A)(2), 2.411. Our Supreme Court has recognized that mediation may result in "full or partial settlement of the case." *City of Huntington Woods v Oak Park*, 500 Mich 885, 885; 886 NW2d 635 (2016), vacated in part on other grounds 500 Mich 985 (2017). In sum, we conclude that the probate court erred by concluding that the order approving the Agreement and modifying the trust was a "prior decision on the merits" for the purposes of res judicata—rather, that order merely resolved some issues in the case, but left others open.

Nor do we find that the probate court's order granting Monicatti's fiduciary fees to be such a prior decision on the merits. The probate court noted that McMahon and Scott had raised objections to Monicatti's fee request based on their theory that Monicatti and Arnelda had conspired to remove assets from the trust, and stated that those objections were "overruled" by its October 30, 2015 opinion and order granting fiduciary fees, noting further that no appeal was taken from that order. However, that opinion merely notes, in a footnote, that "[t]he issue of who was the validly appointed successor Trustee was an issue being litigated" but that "Ms. McMahon, Mr. Scott Dickinson, Mrs. Arthur Dickinson and Mr. Craig Dickinson chose to settle the litigation rendering the issue moot." The opinion also concludes that McMahon's and Scott's objections to Monicatti's fees were "an attempt to adjudicate the issues that [McMahon and Scott] compromised as part of the ultimate settlement." We note that the Agreement contemplated that Monicatti's fiduciary fee claim and any objections would be considered at a later proceeding and were not resolved by the Agreement; nonetheless, the probate court apparently dismissed McMahon and Scott's objections, apart from objections to the rate charged

or hours billed, as being resolved by the Agreement. It does not appear that the probate court ever reached the merits of McMahon and Scott's objections to Monicatti's fee request. Moreover, as these objections were made in McMahon and Scott's individual capacity and not, as far as this Court can discern, in McMahon's capacity as personal representative of the estate, it does not appear that any "claims" by the estate were resolved in the fee proceeding.

Indeed, we question whether "claims" by the estate could have been resolved on their merits in the context of the proceedings on Monicatti's fee petition. McMahon and Scott essentially requested that Monicatti receive no funds from the estate for his efforts expended during his time as trustee. The probate court was only obligated to consider those objections to the extent that they affected its award of fees. See MCL 700.7904(3) ("A court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust). In any event, the probate court clearly stated that it would not consider issues related to a breach of Monicatti's fiduciary duty, or other issues underlying the current case, because of the Agreement—which itself carved out those claims, at least as relates to claims by the estate. Nor was the October 30, 2015 order a final judgment. See MCR 2.604(A). The Agreement provided that the trust would be terminated after certain property in Hale, Michigan was sold and distributed and the resolution of "disputes between and among Leslie, Scott, and Craig" were resolved. The trial court asserted that the trust was dissolved sometime after it issued an order in the decedent case authorizing the Hale property to be sold in August 2016. Plaintiffs' complaint, filed November 2016, recognized that the Agreement provided for the distribution of the proceeds of the Hale property sale, but did not specifically state that such a distribution had been made. It is unclear to this Court whether, and when, the trust in fact terminated. Moreover, the Agreement makes no claim to end the decedent case, which in any event was apparently still active in August 2016, just months before plaintiffs filed their complaint in the instant action.

For these reasons, we conclude that the trial court erred by determining that the prior decision on the merits resulted in a final judgment. See *Duncan*, 300 Mich App at 194.[6] The orders it referred to may have resolved some issues in the case, but were not final judgments.

## 2. CLAIM WAS OR COULD HAVE BEEN RESOLVED

Our discussion of the prior proceedings also supports our conclusion that the claims in the instant case were not resolved in the trust case. However, we conclude that the claims could have been resolved in that case, if we were to consider it to have culminated in a decision on the merits that resulted in a final judgment. We have stated above that McMahon and Scott's claims against Monicatti in their individual capacities "could have been raised" in the prior proceedings for the purposes of the Agreement. The fact that the Agreement carved out the estate's claims against Monicatti shows plaintiffs' awareness that such claims could have been resolved during the settlement proceedings. Monicatti attended the first mediation as the current trustee and an

---

[6] We note further that, by the trial court's reasoning, the Oakland Circuit Court case against Craig should also have been barred by res judicata, if no effect is to be given to the reservation of claims provision in the Agreement.

interested person, and objected to the court's approval of the Agreement. Plaintiffs could have resolved their claims against Monicatti via the mediation process or otherwise pursued other remedies for those claims in the trust case. See, e.g., MCL 700.7901 (listing remedies for breach of trust by trustee). Further, we agree with the probate court, and will not belabor the point, that the trust and decedent cases "arose out of the same transaction" and that resolution of plaintiffs' claims in those actions would have required the same facts or evidence required in the instant case. See *Schwarz v City of Flint*, 187 Mich App 191, 194-195; 466 NW2d 357 (1991).

### 3. SAME PARTIES OR PRIVITY

Finally regarding the probate court's finding that res judicata applies, we conclude that the same parties were involved in the prior proceeding. Although plaintiffs spend a great deal of their brief on appeal arguing that Monicatti was not a "party" to the prior proceedings, it is clear that when the proceedings began he was trustee of the trust; the initial petition in that case made allegations against him in that role. It is not dispositive of the issue that he may have been a party to one action in his representative capacity and to another in his individual capacity. See *Stoudemire v Stoudemire*, 248 Mich App 325, 334; 639 NW2d 274 (2001). And although he was removed as trustee before the Agreement was reached and entered, he was permitted to raise objections to that Agreement.

Moreover, we conclude that the parties were sufficiently "adversarial" to satisfy this element of res judicata. See *Eyde v Charter Twp of Meridian*, 118 Mich App 43, 52-53; 324 NW2d 775 (1982). Adverse parties are "defined as those who, by the pleadings, are arrayed on opposite sides . . . not restricted to the plaintiffs against defendants." *Gomber v Dutch Maid Dairy Farms*, 42 Mich App 505, 512; 202 NW2d 566 (1972). Adversarial parties have a controversy between them which is at issue in the proceedings. *Id*. at 512. Here, the petition filed in the trust case sought, among other relief, to have Monicatti replaced as trustee. Monicatti defended the suit as trustee. McMahon and Scott later moved for partial summary disposition, seeking to have all of Monicatti's actions as trustee after April 18, 2014 declared null and void. Further, Monicatti objected to the approval of the Agreement and McMahon and Scott objected to Monicatti's fees. We conclude the parties were sufficiently "adversarial" in the prior proceedings to satisfy this element.

Therefore, although we agree that the second and third elements of res judicata are satisfied, we hold that the probate court erred by holding that a prior proceeding was resolved by final judgment on the merits so as to bar the estate's claims in the instant case, although we do affirm the probate court to the extent it found McMahon and Scott's individual claims barred, because those claims are barred by the Agreement.

### C. LEGAL MALPRACTICE STATUTE OF LIMITATIONS

The probate court also noted that an alternative ground for its holding regarding the legal malpractice claim was that any claim by the estate for legal malpractice was barred by the applicable statute of limitations. Plaintiffs argue that the trial court erred by doing so, because of the death savings statute. Monicatti does not argue otherwise or seek to defend the probate court's reference to the malpractice statute of limitations, stating only that the probate court clearly stated that he was entitled to dismissal of plaintiffs' claims on res judicata grounds before

mentioning the malpractice statute of limitations. We hold that the probate court erred by relying on this alternative ground for granting summary disposition.

The probate court made reference to MCR 2.116(I)(1) in stating that the legal malpractice claim would be barred by the statute of limitations. MCR 2.116(I)(1) states that "[i]f the pleading show that a party is entitled judgment as a matter of law, or if the affidavits show that there is no genuine issue of material fact, the court shall render judgment without delay." Because the probate court rendered its decision under MCR 2.116(C)(7) and (C)(8), and not (C)(10), we assume that the probate court was stating that the pleadings showed that Monicatti was entitled to judgment as a matter of law, i.e., that petitioners had failed to state a claim upon which relief may be granted, MCR 2.116(C)(8), although it could also have based its conclusion on MCR 2.116(C)(7) (claim barred by statute of limitations). In either event, we conclude that the probate court erred by concluding as a matter of law that the statute of limitations had run for the estate's claims of legal malpractice. The probate court cites no authority for its conclusion that a claim for legal malpractice must have accrued, at the latest, on the day Arthur's conservator was appointed, for purposes of determining the limitations period of MCL 600.5838. Further, the probate court did not discuss the applicability of the death savings clause, MCL 600.5852, to that claim. The parties neither briefed nor argued this issue; nor, taking the well-pleaded allegations in plaintiffs' complaint as true, see *Simko*, 448 Mich at 654, is it clear that no factual development could possibly allow recovery, *Abb Paint Finishing*, 223 Mich App at 561. The probate court erred by relying upon this alternative ground for granting summary disposition on the estate's legal malpractice claim.

## D. THE "TENDER BACK" RULE

Finally, plaintiffs argue that the probate court erred by stating that they had violated the "tender back" rule in filing the present lawsuit. We agree.

Settlement agreements remain binding until rescinded for cause. *Stefanac v Cranbrook Ed Community*, 435 Mich 155, 163; 458 NW2d 56 (1990). "The scope of a release is governed by the intent of the parties as it is expressed in the release." *Rinke v Auto Moulding Co*, 226 Mich App 432, 435; 573 NW2d 344 (1997). "If the text of the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release." *Collucci v Eklund*, 240 Mich App 654, 658; 613 NW2d 402 (2000). The "tender back rule" requires that a party may not file a lawsuit asserting *previously released claims* unless the party first repays all consideration received in exchange for the release. *Stefanac*, 435 Mich at 159.

Here, as stated, plaintiffs did not release claims by the estate against Monicatti. As to those claims, the "tender back" rule is certainly inapplicable. Moreover, regarding McMahon and Scott's individual claims against Monicatti, it is not clear what consideration, if any, they received in return for releasing claims against Monicatti; again, this issue was neither briefed nor raised by the parties below. In fact, Monicatti does not challenge the inapplicability of the tender back rule to this case; rather, he concedes that the probate court only meant to refer to that rule when discussing the other defendants. Under these circumstances, we hold that to the extent the probate court sua sponte held that the "tender back" rule barred plaintiffs' claims against Monicatti (additionally rendering them frivolous), it was mistaken.

-10-

## E. CONCLUSION

We conclude that the probate court erred when it dismissed claims brought by the estate in the instant case on the grounds of res judicata, although we affirm the dismissal of any claims in McMahon and Scott's individual capacity on the grounds that they are barred by the Agreement. We further hold that the probate court erred to the extent that it sua sponte raised the legal malpractice statute of limitations and the "tender back" rule as alternative grounds for affirmance. We therefore affirm in part, reverse in part, and remand for further proceedings. Because of our holdings regarding the probate court's grant of summary disposition, we also vacate the probate court's order of sanctions against plaintiffs, because the probate court clearly erred by finding plaintiffs' claims to be frivolous.[7] See *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002). Although we express no opinion on the ultimate success of plaintiffs' claims, we conclude that their arguments are "sufficiently grounded in law and fact to avoid a finding of frivolity." *Id*.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction. No party having prevailed in full, no costs may be taxed. MCR 7.219(A)(1).

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Mark T. Boonstra

---

[7] Although Monicatti urges this Court not to address the probate court's award of sanctions because at the time of this appeal the order setting the amount of sanctions had not yet been filed, and additionally asserts that plaintiffs have "abandoned" any challenge to sanctions, we conclude that by arguing (in part successfully) that the trial court erred by granting summary disposition to Monicatti, it follows logically that plaintiffs are also challenging the award of sanctions. We see no reason not to address the probate court's finding of frivolousness, merely because the amount of the sanctions was not yet determined at the time of appeal.