### BEAN *v*. STATE LAND OFFICE BOARD.

1. Judges—Certificate of Designation—Filing—Jurisdiction.
   Judges of circuit courts may hold court for each other and visiting judge's failure to file certificate of designation by the presiding circuit judge is not controlling of jurisdiction (CL 1948, § 607.5).

2. Judgment—Motion to Dismiss—Leave to Appeal—Denial Without Prejudice.
   Denial of defendants' motions to dismiss prior to hearing on merits in equity case is not *res judicata* of motion to dismiss, made after hearing on merits, where leave to appeal from such earlier order of denial was denied by Supreme Court without prejudice.

3. Equity—Motion to Dismiss—Opening Statement.
   A motion to dismiss plaintiffs' bill of complaint may properly be granted after plaintiffs have made their opening statement, where it appears from facts conceded thereby that plaintiffs have no right to relief sought.

4. Judgment—Taxation—Suit to Set Aside Tax Sales—Res Judicata.
   Claims that lots upon which village has assessed taxes had not been legally incorporated into village at time assessments were

---

References for Points in Headnotes

[2] 17 Am Jur, Dismissal and Discontinuance § 78; 30 Am Jur, Judgments § 208.
[4] 51 Am Jur, Taxation § 1250.

made, and that an excessive valuation had been placed upon their property, raised by plaintiffs in suit to set aside tax sales without having exhausted their legal remedy provided for appeal to the board of review and other remedies for aggrieved taxpayers, came too late, where tax sale proceedings had proceeded to decree, since the validity of the sale was then *res judicata*.

5. Taxation—Objection to Board of Review—Redemption from Valid Sale—Scavenger Sale.

Property owners who did not make objection to board of review as to assessments claimed to have been illegally made and failed to redeem from tax sales by payment of portion of taxes admittedly valid, were not entitled to have scavenger sale set aside (PA 1937, No 155, as amended).

6. Same—Amendment of Bill—Fraud—Redemption from Valid Sale.

Amendment of bill to set aside tax sale so as to charge that overassessment amounted to fraud and constructive fraud was properly denied, where plaintiffs had lost their rights by failing to redeem the property after a valid sale, since the amendment did not and could not create a cause of action when none existed before.

Appeal from Oakland; Breakey (James R., Jr.), J., presiding. Submitted October 14, 1952. (Docket No. 70, Calendar No. 44,843.) Decided December 9, 1952.

Bill by Mary Bean, individually and as executrix of the estate of Louise Most, deceased, and others against State Land Office Board and others to set aside assessment of taxes. Bill dismissed. Plaintiffs appeal. Affirmed.

*Walter O. Estes,* for plaintiffs.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Elbern Parsons,* Chief Assistant Attorney General, for State Land Office Board.

*Harry J. Merritt,* Corporation Counsel, and
*Charles A. Davis,* Assistant Corporation Counsel,
for County of Oakland.

*Charles H. Losey,* for City of Clawson.

*Dell & Heber,* for Troy township.

SHARPE, J.  On June 9, 1941, plaintiffs filed their
bill of complaint in which they allege that as ben-
eficiaries under the will of Louise Most, they are
title owners of certain lands in Maple Road Park
in Troy township, Oakland county, Michigan.

Plaintiffs allege that the city of Clawson claims
to have taken over certain of said lands for public
purposes, without any bid thereof, under PA 1937,
No 155, as amended,* and that a large portion of
the claimed tax liability for which said lands were
offered for sale were levied and spread by the vil-
lage of Clawson; that all taxes levied and spread by
the village of Clawson were absolutely void, because
said lands were not within the corporate limits of
said village.

Paragraph 6 of plaintiffs' bill of complaint reads as
follows:

"6. Plaintiffs further show unto the court that
said taxes alleged to have been levied and spread
by the village of Clawson were absolutely void be-
cause said village of Clawson never legally incorpo-
rated said territory into said village.  In that con-
nection plaintiffs further show unto the court that
on April 4, 1927, an election was held on the proposi-
tion of incorporating said southeast quarter of the
northeast quarter of section 33 into said village of
Clawson, together with the northeast quarter of
the northeast quarter of said section 33.  At said

---

* See CL 1948, § 211.351 *et seq.* (Stat Ann 1950 Rev and 1951
Cum Supp § 7.951 *et seq.*).—REPORTER.

election the election board declared that said proposition carried in favor of annexing said territory to the village of Clawson. W. J. Burns, the then owner of the northeast quarter of the northeast quarter of said section 33, petitioned for a recount of said election on the 5th day of April, 1927. Said recount was allowed and held on the 22d day of April, 1927. At the close of said recount it was announced publicly that said entire election failed to carry. No subsequent election has even been taken upon the incorporation of said territory into the village of Clawson. All taxes purported to have been levied against said land by the village of Clawson, which your plaintiffs show upon information and belief is the major portion of the taxes on account of which the State offered said lands for sale, were without any legal authority and therefore absolutely void."

Paragraph 8 of the bill of complaint reads as follows:

"8. Plaintiffs further show unto the court that the last assessment for taxes against said lands prior to the purported sale thereof under the provisions of PA 1937, No 155, as amended, places an excessive value thereon and that the valuations on the respective lots bore no proportion to the true cash value of said lots. By comparison with similar lots in the immediate neighborhood and within said subdivision itself lots of little value were assessed in excess of much better located lots of greater natural value and with better improvements in connection therewith. Plaintiffs charge that the assessment of said lots upon which the minimum sale price was determined under PA 1937, No 155, was a fraudulent assessment."

The relief asked for in the bill of complaint is:

"2. That all taxes heretofore assessed against said lands may be declared to be void and cancelled.

"3. Or in lieu thereof, such taxes as were fraud-

ulently assessed without any authority whatever may be declared to have been void and cancelled.

"4. That all sales for taxes heretofore made of said lands may be declared to be void and be set aside and held for naught.

"5. That the court indicate what units of government were entitled to assess taxes against said lands.

"6. That the court fix and determine the basis upon which taxes should be assessed against said lands for the years for which taxes have been unpaid."

On June 18, 1941, the county of Oakland filed a motion to dismiss the bill of complaint for the following reasons:

"1. Plaintiffs' entire complaint is grounded on the claim that the taxes, the failure of which to pay resulted in the State acquiring title, are invalid and void.

"2. Assuming this to be true, defendant contends:

"A. Plaintiffs herein were defendants in the 1938 tax sales proceedings at which time the validity or invalidity of those taxes was in issue as were all other issues within the jurisdiction of the court.

"B. By virtue of the 1938 tax sale decree (CL 1929, § 3459* [Stat Ann § 7.112]) the court then found, 'It is ordered, adjudged and decreed that the amount of taxes, interest, collection fee and charges set down in the column headed "Amount decreed against lands" in the tax record of which said petition forms a part, are valid.' * * *

"C. The statute then orders the sale and sets up the machinery for appeal to the Supreme Court and no appeal was taken.

"D. Section 70 of the tax law [CL 1929, § 3462†] Stat Ann § 7.115 provides for the sale and contains the following: 'Provided, further, That no sale shall be set aside after confirmation, except in cases where

---

* This section was amended by PA 1937, No 114.—REPORTER.
† This section was amended by PA 1937, No 325.—REPORTER.

[A] the taxes were paid, or [B] the property was exempt from taxation. In such cases the owner of such lands may move the court at any time within 1 year after he shall have notice of such sale, to set the same aside, and the court may so order upon such terms as may be just.'

· "E. The taxes complained of in the instant case were not paid and there is no contention that the property was exempt."

The township of Troy and the city of Clawson also filed motions to dismiss. On August 6, 1945, the trial court entered an order denying the several motions to dismiss. Application for leave to appeal from the trial court's decision was made and denied by the Supreme Court, but without prejudice. On December 21, 1945, the auditor general, State land office board, and the county of Oakland, filed an answer and motion to dismiss. The answer contains the following:

"1. That defendant, State land office board is a public corporation created and existing under and by virtue of the provisions of PA 1937, No 155, as amended, commonly called the land board act, clothed with the power and charged with the duty of administering, selling and otherwise disposing of all land in the county of Oakland, the title to which has become vested in the State of Michigan by virtue of the failure of interested parties to redeem from the annual tax sales held in the years 1938 and 1939, and all such lands are under its jurisdiction and control in accordance with the provisions of the aforesaid land board act.

"2. According to the files and records of this Court made in connection with the 1938 and 1939 tax sale proceedings, being Oakland County Chancery Nos. 20,679 and 21,087 respectively, to which reference is hereby prayed, and according to the public records in the offices of the auditor general and the Oakland county treasurer, the property described in plain-

tiffs' bill of complaint was returned delinquent for the taxes assessed thereon in 1935 and prior years and also was returned delinquent for the taxes assessed thereon in the year 1936, in accordance with the provisions of PA 1893, No 206, as amended, applicable to taxes returned delinquent for said years, commonly called the general property tax law, wherefore, pursuant to the pertinent provisions of said general property tax law, as amended applicable to each of the aforesaid tax sales, the auditor general included said lands in his petitions filed in this court in connection with proceedings instituted for the purpose of enforcing the payment of the aforesaid delinquent taxes, which proceedings may be found in the chancery files above referred to.

"3. Said petitions having come on to be heard by this court and proofs of the due publications of the orders of hearing and of said petitions, and the schedules respectively annexed to each such petition, containing, *inter alia,* the descriptions of the premises described in plaintiffs' bill of complaint, having been made and filed in each of said causes and after having heard all objections to said petitions, and after having heard all parties interested in the matters included in said petitions, this court in each of said causes rendered its decree and determining and decreeing that the amounts of taxes, interest and charges for which said premises were alleged to be delinquent were correct, and that said taxes were valid, and decrees in favor of the State of Michigan for the payment of said amounts were thereupon made, which decrees provided, in effect, that in default of such payment said lands should be sold at the 1938 and 1939 tax sales, respectively, and that unless redeemed from said sales with 18 months next following each of said sales, the title thereto, in case the same should be bid in to the State of Michigan, and not then redeemed, should thereupon become absolute in the State of Michigan, which decrees were rendered upon the 23d day of April, 1938, as

to the 1938 tax sale, and upon the 22d day of April, 1939, as to the 1939 tax sale.

"4. Pursuant to said decrees so made by this court in accordance with the provisions of the general property tax law, particularly section 67 thereof, as amended by PA 1937, No 114, the auditor general offered said premises for sale in accordance with the pertinent provisions of the general property tax law, particularly section 70 thereof, as amended applicable to each of said sales, at said 1938 and 1939 tax sales, and for want of other bidders said premises were sold and bid in to the State of Michigan at each of said sales for the nonpayment of the aforesaid delinquent taxes, the amount of the State bid made at the 1938 tax sale being $141,015.28, and the amount of the State bid made at the 1939 tax sale being $9,705.32. * * *

"6. According to the public records in the office of this defendant said premises were duly and lawfully offered for sale by this defendant in accordance with the provisions of section 7 of the land board act and could not be sold by this defendant at said sale for the reason that no lawful bids were made therefor.

"7. Under the provisions of section 8 of the land board act this defendant conveyed the following lots in Maple Road Park Subdivision, Troy township, Oakland county, to School District No 7 of Troy township; lots 14 to 26, inclusive, lots 293 to 307, inclusive, lots 375 to 388, inclusive, by a conveyance dated December 27, 1940.

"8. Under the provisions of section 8 of the land board act this defendant has conveyed the following lots in the aforesaid Maple Road Park Subdivision to the city of Clawson: Lots 71 to 170, inclusive, lots 206 to 276, inclusive, lots 308 to 323, inclusive, lots 359 to 374, inclusive, lots 403 to 418, inclusive, and lots 453 to 468, inclusive, by a conveyance dated December 18, 1940. * * *

"18. The plaintiff and the estate which she represents now have no right, title or interest in and to

the premises described in her bill of complaint by virtue of the same having been sold and bid in to the State of Michigan at the aforesaid 1938 and 1939 tax sales and her failure and the failure of other interested parties to redeem said premises from said sales within the time limited by law for such redemption, as aforesaid, and because she is not the real party in interest as required by CL 1929, § 14010 and is not entitled to maintain any action with respect to the premises.

"19. Said bill of complaint is multifarious in that it joins 4 separate alleged causes of action against 4 separate defendants, some of whom are interested in only 1 of plaintiff's alleged causes of action.

\* \* \*

"21. Plaintiffs' bill of complaint contains no allegations sufficient to authorize this court to set aside either the 1938 or 1939 tax sales under the provisions of section 70 of the general property tax law.

"22. Plaintiffs' bill of complaint is in reality a collateral attack upon the findings of the board of canvassers with respect to the election held on April 4, 1927, which is more fully described in paragraph 6 of said bill."

The township of Troy and city of Clawson also filed answers to plaintiffs' bill of complaint, coupled with motions to dismiss. On June 16, 1949, the trial court entered an order dismissing the bill of complaint. Prior to entering the dismissal order the trial court filed an opinion, in which it is stated:

"a. If the annexation to the village of Clawson were illegal then the valid township taxes, the failure to pay which caused reversion to the State, gave the State absolute title to the lands and for that reason the bill of complaint should be dismissed.

"b. If plaintiffs could have produced the proof of fraud which they claimed to be able to do they would be estopped from asserting the claim because of their failure to protect their rights under the general tax law, viz: Appeal to the board of review and/or the State tax commission.

"c. Failure of plaintiffs to follow the remedy provided by the tax law precluded plaintiffs from seeking relief in a chancery court.

"5. In addition to the points raised by defendants' motions to dismiss, and particularly in view of the fact that counsel for plaintiffs admitted in his opening statement that there were no records of the disposition of the petition for recount on the annexation election, this court is of the opinion that such proof as plaintiffs claimed to be able to produce on the illegality of the annexation to the village (now city) of Clawson, of the territory described in the bill of complaint, if adduced would fall far short of the necessary weight to overcome the fact that for upwards of 24 years the territory has been treated as a part of the village (now city) of Clawson. The annexation certainly is *de facto* if not *de jure*."

Subsequently plaintiffs filed a motion for rehearing and a new trial, which were denied on January 3, 1950.

Plaintiffs appeal and urge that the trial court did not have jurisdiction to enter an order on June 16, 1949, granting defendants' motion to dismiss for the reason that the trial judge who heard the motion and denied the same was Judge Breakey, a circuit judge of Washtenaw county, and the record in Oakland county does not show any certificate from the presiding circuit judge of the State of Michigan authorizing him to sit in Oakland county. In *Alpena National Bank* v. *Hoey,* 281 Mich 307, we had occasion to construe the statute relating to presiding judges. We there said:

"In *People* v. *Phelps,* 261 Mich 45, it was held that provisions of a statute relative to the selection of a presiding judge of a circuit are directory rather than mandatory. Upon the same reasoning, the provision relative to the filing of the certificate of designation by the presiding circuit judge must be held directory rather than mandatory. The business of the courts is too important to the people of the State to permit formal details of the machinery

of the designation of judges to control their jurisdiction. Moreover, we think the general language [CL 1929, § 13949],* that judges of circuit courts may hold court for each other, when read in the light of constitutional intention of statewide functions of circuit judges, is amply sufficient to confer the jurisdiction, at least in the absence of showing of clear usurpation. The Court had jurisdiction to enter the decree. The order *nunc pro tunc* was not necessary."

We find no reason to depart from our decision in that case.

Plaintiffs also urge that the order of August 6, 1945, denying defendants' motions to dismiss is *res judicata* and could not again be renewed. In considering this claim we have in mind that leave to appeal from the order of August 7, 1945, was denied without prejudice. The term "denied without prejudice" is a term often found in the records of the Supreme Court. It often pertains to application for leave to appeal on some phase of a cause before the case has been tried on its merits. We have used the term in denying application for leave to appeal, but with the right of the party seeking leave to appeal to raise the same objections during the trial on its merits, or when the cause is appealed to the Supreme Court. We know of no reason why these reasons cannot be raised prior to a trial on the merits, if decision on the motion disposes of the issues involved in the main case. Under the circumstances of this case the trial court had power to entertain a renewal of the motion. The previous ruling of August 6, 1945, did not prevent a presentation of the motion a second time.

It is also urged that the trial court erred in granting defendants' motion to dismiss the bill of complaint after the opening statement of plaintiffs' at-

* CL 1948, § 607.5 (Stat Ann § 27.550).—REPORTER.

torney on June 14, 1949. The general rule followed in directing a verdict upon the opening statement of plaintiffs' counsel is well stated in 53 Am Jur, pp 303, 304:

"It is a well-established general rule, followed by the majority of the courts of this country, including the courts of the United States, that the trial court may usually direct a verdict for the defendant upon the opening statement of the plaintiffs' counsel, where that statement shows that the plaintiff has no cause of action or right to recover. The rule is founded on the theory that the time of the court and the jury would be wasted since the result, if the evidence were introduced, would necessarily be the same; that it would be an idle waste of time to hear evidence which could not benefit the party offering it. * * * And a trial court has the right to act upon the facts deliberately conceded by counsel in his opening statement to the jury, and direct a verdict against the plaintiff, if such conceded facts would not entitle him to a verdict; but such power must be exercised sparingly, and never without full consideration and opportunity for counsel to qualify his statement so far as the truth will permit."

In paragraph 6 of plaintiffs' bill of complaint, the allegation is made that a part of the lots sold were illegally incorporated in the village of Clawson, and assessments made by the village on such lots were absolutely void. Under paragraph 8 of plaintiffs' bill of complaint the allegation is made that the assessing officer placed an excessive valuation on all lots that were formerly the property of Louise Most. We note that no claim is made that the assessment made on lots outside of the village of Clawson was absolutely void. The trial court in an opinion stated:

"Proceeding now to a short resumé of the grounds for the court's decision, the court finds that as to the

allegations of paragraph 6 and counsel's opening statement as to the proofs he would offer in support of the allegations in paragraph 6 if all were proved, that counsel in his statement expects to prove, said proofs would fall far short of establishing that the said lots were not incorporated in the village of Clawson as a result of said election and the attack on the propriety or finality of the election would fall.   There would be with all the proofs suggested to be offered by counsel, there would still be insufficient proofs to establish by a preponderance of the evidence that the recount showed that the annexation election lost.

"The court is very much impressed by the statement contained in the opening statement which appear to be the proofs, and that is that these lots have been within the asserted jurisdiction of the village of Clawson and now the city of Clawson, ever since the election in 1927.   A period of some 14 years passed by before the papers in this case were filed apparently attacking the village of Clawson's jurisdiction over the lots and then, of course, we have the period from 1941 until the present time, a period of 8 years, making a total of 22 years, approximately, that these lots have been within territory over which the village and as I understand now the city of Clawson, has been exercising jurisdiction.

"With respect to the second claim for relief and the proofs which counsel in his opening statement indicated he would offer, that is directed to paragraph 8 of the bill of complaint.   The court finds that there is no showing in the first place that the plaintiffs exhausted their legal remedy, their remedies provided by statute for appeal to the board of review and the other remedies which the statute provides for one who considers himself aggrieved by an unjust valuation or tax assessment to pursue before the court will permit an attack on the assessment.   In this regard the court cites *Petoskey & Bay Shore Gas Co. v. Petoskey,* 162 Mich 447.   *   *   *

"If the tax by the village of Clawson (city of Clawson), is valid, then there was no unlawful portion of the claimed tax as made asserted, in other words, if the village of Clawson had a right to tax these lots then the tax was not unlawful, that portion of the tax for which the property was sold was not illegal.  *  *  *

"Finally if the township tax was legal in any event, there having been no attack on that, all of that was part of the original tax items and the court is impressed under the *Blunt Case** would be sufficient to sustain the court denying the plaintiff's claim in that regard.

"The motions of the defendants are therefore granted and decree may be entered accordingly."

It is conceded that no steps were taken by plaintiffs to redeem the lands until the instant suit was filed. In *Muirhead* v. *Sands,* 111 Mich 487, we said:

"If the owner permits the case to proceed to decree, all these questions become *res judicata.* The statute, in terms, provides that no sale shall be set aside after confirmation, except in cases where the taxes were paid, or the property was exempt from taxation, and that in such cases the owner of such lands may move the court at any time within 1 year after he shall have notice of such sale, to set the same aside."

If the assessment on these lots was unjust, then plaintiffs' remedy was to appear before the board of review for its correction. See *Petoskey & Bay Shore Gas Co.* v. *City of Petoskey,* 162 Mich 447.

It is conceded by plaintiffs that the lots were sold for valid and invalid taxes. In *Blunt* v. *Auditor General,* 324 Mich 675, we said:

"Plaintiffs contend that they are entitled to redeem the north 40 by payment of taxes as originally returned, without interest or penalties. This, in

_____
* *Blunt* v. *Auditor General,* 324 Mich 675.—Reporter.

turn, is based upon the theory that the 1930-1935, and the 1936 and 1937 reassessment taxes were never validly assessed, and that the 1939 tax, though correctly levied, falls because of its combination with the prior incorrect assessments. Plaintiffs ignore the fact that the 1939 tax was not a reassessment tax, but a valid regularly-levied tax on a legal description. Plaintiffs' remedy obviously should have been to object to the auditor general's tax sale or redeem the property. They allowed the period of redemption to expire following the 1942 tax sale without paying the valid 1939 tax for which the property was sold at that sale. It is now too late to redeem by seeking, in effect, to set aside the scavenger sale."

The above case disposes of plaintiffs' claim that they are entitled to a trial on the merits of the case.

Plaintiffs urge that the court was in error in refusing to grant their motion to amend their bill of complaint so as to set out in more detail their claim of fraudulent assessment. It appears that while the motion to dismiss was being argued, plaintiffs' then attorney sought to amend paragraph 8 of their bill of complaint by adding the following:

"Plaintiffs charge that there was such a gross over-valuation of the property referred to in the bill of complaint, particularly in the year 1938, as to constitute fraud and constructive fraud under the statute and applicable cases."

In view of the fact that plaintiffs lost all of their rights by failing to redeem the property after a valid sale, we hold that the bill of complaint or the proposed amended bill of complaint did not and could not create a cause of action when none existed before. It was not error to deny the amendment.

The order dismissing the bill of complaint is affirmed, with costs to defendants.

ADAMS, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.