# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN BUCHANAN, MICHAEL J. WARREN, WILLIAM MITCHELL, LAWRENCE RUTKA, JOSEPHINE RUTKA, LAWRENCE UTLEY, DELORES P. SCHELLENBERG, JAMES E. SCHELLENBERG, DENISE E. MATTESON-BLAIR, a/k/a DENISE E. MATTESON, a/k/a DENISE E. BLAIR, JEFFREY W. BLAIRE, JANET BUCHANAN, GORDON MATTESON, MARJORIE MATTESON, LOIS WANGLER, GERALD SCHAVE, CAROLYN BAILLO SCHAVE, and CAROLYN GENEREAU,

UNPUBLISHED
September 24, 2015

Petitioners-Appellants,

v

No. 320780
Oakland Circuit Court
LC No. 2013-137140-CZ

OAKLAND COUNTY, WATER RESOURCES COMMISSIONER'S OFFICE, and JIM NASH,

Respondents-Appellees.

Before: TALBOT, C.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

Petitioners appeal as of right an order granting summary disposition in favor of respondents, Oakland County, Water Resources Commissioner's Office (OCWRC), and Jim Nash (Oakland County's Water Resource Commissioner), in this petition for writ of certiorari challenging the establishment of a drainage district on constitutional and statutory grounds. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

On November 24, 2009, certain freeholders signed an application to the OCWRC to lay out and establish a drainage district along Pettibone Lake for 28 lakefront lots in Reid's Subdivision, including lots 16 and 32, which had been dedicated as park land and intended to give non-lakefront lot owners in the subdivision access to the lake. On March 15, 2010, the OCWRC entered an order for laying out and designing a drainage district called the "Lower Pettibone Sanitary Drain."

-1-

On August 19, 2010, a petition to establish the drainage district was filed. The petitioners listed 28 "freeholders whose lands would be traversed by the drain or drains applied for or abut on any highway or street along either side of which drain extends between the point where the drain enters the highway and the point where it leaves the highway." The owner of lots 16 and 32 was identified as "Reid's Subdivision Association." Twenty freeholders signed the petition.

On September 9, 2010, newspapers published a "Notice of Filing of Order Designating a Drainage District" On October 7, 2010, newspapers published notice of an upcoming board of determination hearing. On October 18, 2010, a board of determination, including J. Michael Hickox, Larry Goldman, and Joseph P. Kozma, held a meeting and determined that the Lower Pettibone Sanitary Drain was "necessary and conducive to public health, convenience and welfare."

On February 2, 2011, Oliver Hayman and other freeholders[1] filed an amended petition for review pursuant to MCR 7.105(B)(2) against the OCWRC, the Water Resources Commissioner of Oakland County (John McCulloch), and the board of determination in Oakland Circuit Court (Judge Colleen A. O'Brien). The petitioners in that action alleged that the subdivision residents were not given sufficient notice of the designation of the drainage district because the publication in the newspaper occurred six months after the designation. They also alleged that the petition was defective because it did not account for all freeholders who could be liable for an assessment for benefits; the petition identified the owner of lots 16 and 32 as Reid's Subdivision, which did not reflect the actual ownership interests of the common owners of these lots in the subdivision. The petitioners in that action further alleged that the board of determination was appointed contrary to MCL 280.72. Finally, they alleged that the finding of necessity was an abuse of discretion and that their rights to equal protection and due process were violated by limiting their voice in the petition process.

The action before Judge O'Brien was dismissed on procedural grounds, and this Court dismissed the petitioners' appeal by right for lack of jurisdiction in Docket No. 303847.[2] In Docket No. 303850, this Court also denied the subsequently filed delayed application for leave to appeal "for lack of merit in the grounds presented."[3]

On June 21, 2012, Kevin Larsen on behalf of McCulloch signed an order authorizing the initiation of condemnation proceedings and taking any other appropriate steps to construct the Lower Pettibone Sanitary Drain. On the same day, Larsen signed a "Declaration of Taking" demonstrating the OCWRC's intent to

---

[1] According to respondents, Oliver Hayman was the only petitioner in that case, but his counsel added additional names to the caption without leave of court.

[2] *Oakland Co Water Resources Comm'r v Hayman*, unpublished order of the Court of Appeals, entered May 23, 2011 (Docket No. 303847).

[3] *Hayman v Oakland Co Water Resources Comm'r*, unpublished order of the Court of Appeals, entered January 6, 2012 (Docket No. 303850).

take by eminent domain the property interests for a permanent sewer easement encompassing the entire length and width of three dedicated private roads, Lake Drive, Highland Drive, and Lakeview Drive, within the Reid Subdivision . . . as necessary for the proper construction and maintenance of the Lower Pettibone (Lake) Sanitary Drain . . . .

The declaration estimated that "just compensation" was $0. A "good faith offer" for the easement, in exchange for $0, was made to owners of property along the requested easement on July 13, 2012.

On August 17, 2012, John Buchanan, Oliver Hayman, Peggy Hayman, Michael J. Warren, William Mitchell, Lawrence F. Rutka, Josephine Rutka, Lawrence Utley, Delores P. Schellenberg, James E. Schellenberg, Denise E. Matteson, and Jeffrey W. Blair filed a complaint in the United States District Court for the Eastern District of Michigan against Oakland County, OCWRC, McCulloch, and Willis C. Bullard, Jr. (former Oakland County Clerk/Registrar of Deeds).

On November 19, 2012, the Lower Pettibone Lake Sanitary Drain Drainage District filed a complaint in Oakland Circuit Court (Judge Rudy J. Nichols) against Reid's Subdivision Association and other property owners, including non-lakefront property owners, to obtain an easement to construct, maintain, operate, and repair a sewer under three roads in the subdivision. The drainage district reserved the right to "bring federal or state cost recovery actions against the owners of the Property arising out of the release of hazardous substances on the Property." The drainage district noted that the defendants in the case could challenge the necessity determination for the drainage district within 21 days, MCL 213.56, otherwise the drainage district claimed that title would vest with the OCWRC.

On December 26, 2012, certain property owners answered the condemnation complaint, noting the pending action in federal district court. The property owners attached the federal complaint to the answer and urged Judge Nichols to suspend any condemnation proceedings until the federal court decided the case and, only order the requested relief if such an outcome was necessary following the federal court decision. The property owners also requested that the trial court "[a]ward any other relief to the Defendant(s) as may be necessary to ensure fundamental fairness and their right to be heard, in the present condemnation action, and in the pending federal action."

Certain property owners also filed a motion for review of the decision of necessity and for suspension of the condemnation proceedings in that action.[4] They alleged that the condemnation proceedings constituted an error of law and an abuse of discretion. They also argued that the issues in the federal complaint were "necessarily interwoven into the legitimacy of the present condemnation proceedings . . . ." They further argued that the reasons stated in the

---

[4] While we were unable to locate the motion for review in the lower court file, both parties have attached a version of the motion to their briefs on appeal. The motions are similar in content, but filed by different property owners.

federal complaint "constitute an *error of law* and *abuse of discretion* by Oakland County, the [OCWRC], by Bill Bullard . . ., and by John McCulloch . . . ." They "incorporate[d] [the federal complaint's] contents herein as if fully stated."

On March 5, 2013, Judge Nichols denied the property owners' requests to suspend any condemnation proceedings. Judge Nichols noted the property owners' argument "that the drain has not been duly established pursuant to MCL 280.71 and that the designation and establishment of the drain system is being challenged." Judge Nichols ruled that the determination of public necessity was binding in the absence of fraud, error of law, or an abuse of discretion, which the property owners failed to establish. On the record, at a hearing on March 27, 2013, Judge Nichols explained that the property owners' arguments, including claims that the board of determination had a pecuniary interest and the petition process excluded certain freeholders, were "conclusory" and failed to "show any legal significance." When he denied the property owners' request to vacate the condemnation proceedings on the record, Judge Nichols incorporated his reasoning in the March 5, 2013 order and the drainage district's arguments. Judge Nichols then granted the drainage district's motion to vest title. On April 17, 2013, written orders vesting title as of November 19, 2012, were entered.

On March 18, 2013, the plaintiffs in the federal action amended their complaint. The amended complaint removed a count alleging a violation of substantive due process rights related to the Takings Clause of the Fifth Amendment, and added additional plaintiffs—James A. Izzi and Ron Izzi. In Count I, the federal plaintiffs claimed that the defendants violated their due process rights by failing to provide them notice, and claimed that they would share any liability connected with the planning, construction, and maintenance of the drainage district, including railroad liability insurance premiums. In Count II, the federal plaintiffs further claimed that their First Amendment rights to free assembly and free expression were violated because the defendants miscounted the number of freeholders required to sign the petition, the plaintiffs were not given notice of the petition, and then they were excluded from participating in its establishment. In Counts III and IV, the federal plaintiffs claimed their federal and state constitutional rights to equal protection were violated because the defendants failed to send notice to the non-lakefront property owners, excluded them from the petition process under MCL 280.71, and denied their vote, thereby treating them disparately compared to similarly-situated lakefront property owners. The federal plaintiffs alleged that the defendants' actions impaired their fundamental property rights under the Fifth Amendment and the Michigan Constitution of 1963. In Count V, the federal plaintiffs claimed that, under Article VI, § 28 of the Michigan Constitution and MCL 280.71, they were denied the right to review of the decision of necessity, the designation and establishment of the drainage district, and their alleged statutory and constitutional violations. The federal plaintiffs further alleged that the purpose of those provisions—to prevent self-interested parties from being appointed to the board of determination—was impaired by Bullard's failure to recuse himself from the designation and establishment of the drainage district and the appointment of Kozma. In Count VI, the federal plaintiffs again alleged violations under Article VI, § 28 of the Michigan Constitution and MCL 280.71, as well as MCL 280.72, on the basis of the improper number of signatures on the petition and improperly appointed members of the board. In Count VII, the federal plaintiffs alleged that the Drain Code of 1956, MCL 280.1 *et seq.*, was unconstitutional if it, in fact, failed to provide them with timely notice of the designation of the drainage district, give them a voice in the

proceeding, or allow any remedy for errors in the designation, thereby affecting their rights to due process and equal protection.

On October 23, 2013, Nash filed a final order of determination that the drain shall be established and noted 25 properties that would be assessed for benefits in its construction. Notably, lots 16 and 32 were not included for this special assessment.

On November 4, 2013, petitioners, including both lakefront and non-lakefront property owners, filed the instant writ of certiorari or complaint for superintending control under MCR 3.302 in Oakland Circuit Court (Judge Rae Lee Chabot). Petitioners also urged the court to suspend any proceedings in the case pending the outcome of the federal matter. Petitioners argued that the common owners of lots 16 and 32 should have been considered for purposes of the petition, as required by MCL 280.71. Had the proper owners of lots 16 and 32 been considered, many more signatures would have been required in the petition. Petitioners argued that, later, on November 24, 2009, an application for designating the drainage district was filed, and on March 15, 2010, the designation was ordered, but notice of the designation was never timely or seasonably provided, preventing residents from applying for a hearing.

In Count I, petitioners alleged that the non-lakefront property owners' constitutional rights to equal protection were violated because, by not sending notice, excluding them from the petition process, and denying their vote, respondents treated non-lakefront property disparately compared to similarly-situated residents in the subdivision who did receive that information. Petitioners alleged that respondents' actions impaired their fundamental property rights under the Fifth Amendment. In Count II, petitioners alleged that, under Article VI, § 28 of the Michigan Constitution and MCL 280.71, they were denied the right to review of the decision of necessity and the designation and establishment of the drainage district. Petitioners further alleged that the purpose of those provisions—to prevent self-interested parties from being appointed to the board of determination—was impaired by Bullard's failure to recuse himself from the designation and establishment of the drainage district and the appointment Kozma and Goldman. In the complaint, petitioners alleged that Goldman's interest derived from the fact that he had been "a long-time wholesale supplier of goods to Mr. Bruce Holden, a local store owner," who was "a leading proponent of the Drainage District" and owner of non-lakefront and lakefront property. In Count III, petitioners again alleged violations under Article VI, § 28 of the Michigan Constitution and MCL 280.72 on the basis of the improper number of signatures on the petition and improperly appointed members of the board, including Hickox, Kozma, and Goldman. In Count IV, petitioners alleged that the issuance of the final order of determination was premature because the right of way and damage waivers had not yet been obtained, and therefore respondents violated Article VI, § 28 of the Michigan Constitution, MCL 280.151, and MCL 280.161.

On November 12, 2013, respondents moved to have the instant case reassigned from Judge Chabot to Judge Nichols or Judge O'Brien. Respondents suggested that assigning the case to Judge Nichols would be most judicially efficient because he already had some familiarity with the underlying disputed based on the condemnation action pending before him.

The next day, respondents moved for summary disposition. They argued that, in light of Judge Nichols's decision in the condemnation case, the claims were barred under MCR

2.116(C)(7) by res judicata and collateral estoppel. Respondents argued that, contrary to petitioners' claim, they lacked any ownership interest in the common area lots; rather, petitioners had an easement appurtenant, or right to use the property, only. They also argued that, under *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265; 831 NW2d 204 (2013), any due process claims were barred as a matter of law because due process only applies when a drainage district determines assessments that will be levied, which had not yet occurred. Finally, respondents noted that petitioners made one new claim, which was not barred by res judicata or collateral estoppel, but was subject to summary disposition under MCR 2.116(C)(8) because petitioners failed to state a claim as a matter of law. Specifically, respondents argued that the claim that the final order of determination was premature was inconsistent with the record because, prior to the final order, Judge Nichols had already found that title was vested in the drainage district.

On November 25, 2013, petitioners filed a response to the motion to reassign the case. They argued that the parties were different in the case before Judge O'Brien that none of the substantive issues were addressed because of the procedural dismissal, and that Judge O'Brien only had jurisdiction to review the findings of the board of determination. They also argued that the condemnation proceeding was limited to the issue of condemnation and did not involve any of the claims raised in federal court or the instant action, and that Judge Nichols had limited jurisdiction under the Drain Code. Petitioners further argued that the federal court declined to apply res judicata, so any similar arguments here should be barred. Petitioners asserted that, instead of reassigning the case, judicial economy would be served by suspending the action pending the federal court's decision.

At a hearing on November 27, 2013, Judge Chabot granted the motion to reassign the case to Judge Nichols. Respondents filed a motion for entry of a proposed order regarding reassignment, noting petitioners' failure to agree to its form; but petitioners subsequently answered the motion, agreeing to that form.

On December 10, 2013, petitioners filed a response to the motion for summary disposition. They noted that two issues had never been raised before the instant complaint, including the claim that Goldman had a pecuniary interest in the decision of necessity and that Nash prematurely entered the final order of determination. Petitioners further argued that the motion was not ripe for review because they were entitled to amend the petition under MCR 2.108. Regarding issue preclusion, petitioners argued that the instant claims were not addressed by Judge O'Brien, who declined to exercise jurisdiction, and petitioners did not file a counterclaim in the condemnation action and could not file one because the issues were not reviewable by Judge Nichols at the time. Petitioners further argued there was no privity among them because each had their own property and concerns regarding condemnation. Finally, petitioners argued that the trial court was required to accept the facts pleaded as true to determine whether petitioners stated a claim upon which relief could be granted.

On December 10, 2013, Judge Chabot entered an order reassigning the case from Judge Chabot to Judge Nichols. Petitioners signed and approved the order as to form.

At a hearing on February 5, 2014, Judge Nichols ruled:

> In the prior condemnation action before this Court by way of orders denying a request to suspend the proceedings and review of the decision on public necessity, the Court upheld -- this Court upheld the finding that the drain district was necessary and that proper procedure had been followed.
>
> This Court specifically held that no error of law or of discretion was shown. . . .
>
> * * *
>
> For these reasons and those further outlined by defendants, the Court finds that the claims are barred by collateral estoppel. That is, involve the same facts essential to the case already determined in the condemnation case.

Accordingly, Judge Nichols granted respondents' motion for summary disposition. On February 11, 2014, respondents filed a motion for entry of order granting their motion for summary disposition.

On February 12, 2014, petitioners filed a motion before the chief judge to strike the order dismissing their case, citing an administrative rule requiring the chief judge in Oakland County to approve of any reassignment order before it can be finalized. Petitioners argued that, absent such an order, Judge Nichols lacked any authority to preside over their case.

On February 14, 2014, Chief Judge Nanci J. Grant ruled that she lacked the authority to strike the order because the relief requested was "not administrative in nature." She further ruled:

> This Court declines to rule on the instant motion. Further, because Judge Rudy Nichols has been reviewing and ruling on motions recently filed in the captioned matter, it is This Court's opinion that any motions or arguments regarding reassignment should properly be heard before Judge Nichols.

In response to the motion to strike, respondents noted that petitioners never raised the issue of Judge Nichols's authority to hear the case until after he rendered an unfavorable decision.

On February 19, 2014, at 8:00 a.m., Judge Nichols entered an order granting respondents' motion for summary disposition for the reasons set forth on the record on February 5, 2014. On the same day, at 3:30 p.m., Judge Grant entered an order reassigning the case from Judge Chabot to Judge Nichols, and all three judges signed the order, which provides, in part, "Date of Session: Tuesday, January 28, 2014." It further provides, "The Judge to whom this case was assigned, the Honorable Judge Rae Lee Chabot is unable to hear this case because –reassigning order date 12/10/2013."

Petitioners then filed another pleading to strike and set aside any findings and orders by Judge Nichols, claiming that they did, in fact, raise the issue of Judge Nichols's authority to hear the case in their response to the motion for summary disposition, referring to their claim that

-7-

Judge Nichols does not and did not have jurisdiction to review anything but the questions related to the condemnation. In response, respondents argued that petitioners' repeated claims regarding Judge Nichols's authority to hear the case were frivolous and requested costs under MCR 2.114(F), MCR 2.625(A)(2), and MCL 600.2591.

On March 5, 2014, Judge Nichols denied petitioners' motion to strike and set aside its orders. Judge Nichols ruled that the motion was moot because the case had subsequently been properly reassigned to him. Judge Nichols further ruled that any error was harmless because it would not have changed the result on the ruling for summary disposition. "Petitioners fail to provide any legal authority to establish that this court lacked jurisdiction due to the failure to execute an internal reassignment order." Judge Nichols declined to award costs to respondents.

Petitioners appealed as of right. Judge Nichols subsequently denied respondents' motions for entry of judgment of costs and for entry of judgment attorney fees, as well as petitioners' motion to stay enforcement of the court's order granting defendant's motion for summary disposition. This Court also denied petitioners' motion for stay and ex-parte motion for temporary restraint.[5]

## II. COLLATERAL ESTOPPEL

On appeal, petitioners argue that the trial court erred in determining that their claims were barred by collateral estoppel. We agree in part.

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7) to determine whether the moving party was entitled to judgment as a matter of law. *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001). The application of collateral estoppel presents a question of law that this Court also reviews de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Collateral estoppel, also known as issue preclusion, "is a flexible judge-made rule generally said to have three purposes: To 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication[.]' " *Detroit v Qualls*, 434 Mich 340, 357 n 30; 454 NW2d 374 (1990), quoting *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). To apply collateral estoppel, a party must show that

> (1) the issue was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there is mutuality of estoppel. The issue to be decided must be identical to the one decided in a prior action, and not merely similar. [*Wells Fargo Bank, NA v Null*, 304 Mich App 508, 520; 847 NW2d 657 (2014) (citations omitted).]

---

[5] *Buchanan v Oakland Co*, unpublished order of the Court of Appeals, entered July, 2014 (Docket No. 320780); *Buchanan v Oakland Co*, unpublished order of the Court of Appeals, entered August 21, 2014 (Docket No. 320780).

In the prior condemnation action involving the same drain, the defendants answered the complaint by noting that an action was pending in federal court that raised constitutional and statutory claims about the establishment of the drainage district. The defendants in the condemnation action urged the trial court to suspend its decision on condemnation until the federal issues were resolved. At the same time, the defendants incorporated the arguments in the federal complaint as reasons to find an error of law or abuse of discretion in the condemnation action. The trial court concluded that the defendants did not establish fraud, an error of law, or an abuse of discretion. After making this conclusion, the trial court not only denied the defendants' request to suspend the condemnation action until the federal case was decided, but also granted the motion for entry of an order vesting title in the easement to the drainage district.

## A. ACTUALLY LITIGATED/FINAL JUDGMENT

"To be necessarily determined in the first action, the issue must have been essential to the resulting judgment; a finding upon which the judgment did not depend cannot support collateral estoppel." *Bd of Co Rd Comm'rs for the Co of Eaton v Schultz*, 205 Mich App 371, 377; 521 NW2d 847 (1994). Under MCR 7.202(6)(a)(i), a final judgment is "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order[.]" "Final judgments are such as at once put an end to the action by declaring that the plaintiff has either entitled himself, or has not, to recover the remedy he sues for." *Wells Fargo*, 304 Mich App at 521 (citation and quotation marks omitted). Moreover, "[a] decision is final when all appeals have been exhausted or when the time available for an appeal has passed." *Bryan v JP Morgan Chase Bank*, 304 Mich App 708, 716; 848 NW2d 482 (2014) (citation and quotation marks omitted).

The bulk of the issues raised in the instant case are identical to the issues raised in the federal complaint and incorporated by the property owners in the condemnation action. Count I of the instant case involving equal protection and fundamental property rights mirrors Counts III and IV of the amended federal complaint.[6] Count II of the instant case involving the right to appellate review and interested parties on the board of determination mirrors Count V of the federal complaint with one exception; in this case, in addition to arguing that Bullard and Kozma were self-interested and, therefore, improperly appointed to the board of determination under the Drain Code, petitioners make the same claim regarding the third board member, Goldman. Count III of the instant case alleging violations of the Drain Code with respect to the petition and appointment of members on the board mirrors Count VI of the federal complaint, but adds claims regarding Goldman. The claim in Count IV that the final order of determination was premature was not raised in the federal complaint or in the condemnation action.

The issues in Counts I, II, and III of the instant complaint, which are identical to the federal complaint, were actually litigated in the condemnation action. In rejecting the property

---

[6] Although petitioners attached the original federal complaint in the condemnation action, the original federal complaint was not contained in the lower court file. However, as discussed above, according to the amended federal complaint, the amendments merely removed alleged Takings Clause violations and added parties.

owners' defense and granting the orders vesting title in the easement, the trial court held that the property owners' claims were "conclusory" and failed to "show any legal significance." Although the purpose of the condemnation action was to review the determination of public necessity, the trial court found that the property owners were challenging the establishment of the drain system and, therefore, plaintiff's authority to proceed with the condemnation action. The trial court necessarily rejected defendant's arguments, including the federal issues that the property owners inserted into the action, in concluding that there was no fraud, error of law, or abuse of discretion in the determination of public necessity. In light of the property owners' argument inserting the federal claims as a defense to the condemnation action, the federal claims were necessarily determined in the condemnation action. Therefore, these findings were essential to the judgment. See *Schultz*, 205 Mich App at 377.[7] Those orders vesting title were final because the property owners did not appeal and, by the time of the order granting summary disposition in the instant action, the time available for an appeal had passed. *Bryan*, 304 Mich App at 716; see MCR 7.204(A)(1)(a) (an appeal of right in a civil action must be taken within 21 days after the entry of the judgment or order appealed from).

But as discussed further throughout this opinion, the claims regarding Goldman (Counts II and III) and the final order of determination (Count IV) were not raised previously, and therefore could not have been actually litigated in the condemnation action. Thus, the trial court erred by granting summary disposition under MCR 2.116(C)(7) with regard to those issues.[8] On appeal, respondents counter that similar issues were considered in the condemnation action, but for collateral estoppel to apply, the issues must be identical, not merely similar. *Wells Fargo*, 304 Mich App at 520.

B. SAME PARTIES/FULL AND FAIR OPPORTUNITY TO LITIGATE

This Court has stated:

> For collateral estoppel to apply, the parties in the second action must be the same as or privy to the parties in the first action. A party is one who was directly interested in the subject matter and had a right to defend or to control the proceedings and to appeal from the judgment, while a privy is one who, after the judgment, has an interest in the matter affected by the judgment through one of

---

[7] We note that issues raised in the action before Judge O'Brien could not collaterally estop any issues raised here because they were not necessary to the judgment dismissing that case. Rather, that case was dismissed because of procedural errors. See *Schultz*, 205 Mich App at 377.

[8] There has been no fact-specific argument by respondents on appeal that, with reasonable diligence, any of these issues could have been litigated in the condemnation action and therefore the claim would have been alternatively barred by res judicata. See *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004) ("The doctrine [of res judicata] bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.").

the parties, as by inheritance, succession, or purchase. [*Rental Properties Owners Ass'n of Kent Cty v Kent Cty Treasurer*, 308 Mich App 498, 529-530; 866 NW2d 817 (2014) (citations omitted).]

Generally, relitigation is permitted when "[t]he party against whom preclusion is sought could not, *as a matter of law,* have obtained review of the judgment in the initial action. . . ." *Monat v State Farm Ins Co*, 469 Mich 679, 685; 677 NW2d 843 (2004) (citation and quotation marks omitted).

On appeal, petitioners do not make any arguments regarding whether the parties in the instant action were the same parties in the condemnation action. Therefore, any consideration whether the trial court erred in applying collateral estoppel on this ground is abandoned. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). Even if we were to address this requirement, however, we would conclude that the same parties, or parties in privy to those parties, had a full and fair opportunity to litigate the issues in the condemnation action. See *Wells Fargo*, 304 Mich App at 520.

## C. MUTUALITY OF ESTOPPEL

With regard to mutuality of estoppel, our Supreme Court has explained that it

"requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, '[t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.' " [*Monat*, 469 Mich at 684-685 (citation omitted)].

Petitioners similarly fail to develop any argument regarding whether mutuality of estoppel existed between the parties in the instant action and the condemnation action. Therefore, any consideration whether the trial court erred in applying collateral estoppel on this ground is also abandoned. See *Houghton*, 256 Mich App at 339-340. Even if we were to address this requirement, however, we would conclude that respondents would have been bound by the condemnation action had it gone against the drainage district. See *Monat*, 469 Mich at 684-685. Alternatively, mutuality of estoppel is not required because collateral estoppel is being asserted defensively to prevent petitioners from relitigating issues that they had a full and fair opportunity to litigate in the condemnation action. See *id*. at 691-692.

## D. PETITIONERS' ARGUMENTS ON APPEAL

Petitioners argue that, in granting summary disposition on the basis of collateral estoppel, the trial court violated MCL 280.161, which they allege required the court to conduct an evidentiary hearing. Petitioners cite the relevant portion of MCL 280.161, which provides that "[i]f issues of fact are raised by the petition for such writ and the return thereto, such issues shall, on application of either party, be framed and testimony thereon taken under the direction of the court." Here, the issues in the federal complaint were raised previously in the condemnation action and were resolved at that time; no questions of fact remained. Therefore, any argument

that an evidentiary hearing was required to take testimony regarding the same issues in the instant action is meritless under the plain language of MCL 280.161.

However, according to the petition, issues of fact remained regarding Goldman's pecuniary interest in the drain and the final order of determination. In their motion for summary disposition, respondents alternatively relied on MCR 2.116(C)(8) (failure to state a claim for which relief can be granted), at least with respect to petitioner's claim regarding the final order of determination. Accepting the factual allegations in the complaint as true and drawing inferences in a light most favorable to petitioners, summary disposition on these two issues would not have been appropriate under MCR 2.116(C)(8). See *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012). We therefore remand for further proceedings regarding these allegations and consistent with MCL 280.161.

Petitioners further argue that they were not given the opportunity to amend the petition before summary disposition was granted. Nothing in the lower court record suggests that petitioners ever requested and were denied the right to amend the petition. In addition, on appeal, petitioners do not assert any additional issues that they would have included in an amended petition to defeat summary disposition. Because this Court cannot discover and rationalize the basis for these claims, we conclude that petitioners' argument is abandoned. See *Houghton*, 256 Mich App at 339-340.

Next, petitioners argue that, under *Elba*, 493 Mich 265, the trial court in the condemnation action lacked subject-matter jurisdiction to consider any of the constitutional and statutory challenges to the establishment of the drainage district, and therefore, that ruling could not be considered in the instant case for purposes of collateral estoppel. Petitioners' argument is unpersuasive.

As this Court observed in *Usitalo v Landon*, 299 Mich App 222, 228; 829 NW2d 359 (2012):

> Jurisdiction over the subject matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial. [Citations and quotation marks omitted.]

Furthermore, "while the lack of subject-matter jurisdiction may be collaterally attacked, a court's exercise of jurisdiction can only be challenged on direct appeal." *Id.* at 229.

Petitioners are not attacking the subject-matter jurisdiction of the trial court to oversee condemnation pursuant to MCL 280.75 ("If any person whose lands would be traversed or damaged by a proposed drain has not executed a release of the right-of-way, the drainage district may institute condemnation proceedings to obtain the necessary right-of-way, an easement, or other property interest pursuant to the uniform condemnation procedures act . . . ."). Rather, they contend that, under *Elba*, certain defenses—particularly, constitutional and statutory challenges

to the establishment of the drainage district—cannot be considered by the court presiding over the condemnation action. As an initial matter, we noted that it was petitioners who asserted those challenges as defenses in the condemnation action. Moreover, assuming without deciding that petitioners are correct that claims regarding establishment were not a defense to condemnation, because the property owners did not file a direct appeal on that basis, the judgment is valid and binding, and it cannot be collaterally attacked in this subsequent appeal for a separate case. See *Usitalo*, 299 Mich App at 228-229.

Petitioners further argue that the trial court in the condemnation action erred by ruling that any challenges to the establishment of the drainage district were required to be filed within 10 days under MCL 280.72, and therefore, the ruling could not be applied for purposes of collateral estoppel. A review if the transcripts reveals, however, that the trial court was merely reciting the law under MCL 280.72a—the trial court never stated that any challenge in that case was untimely. Even if the trial court made such a ruling, collateral estoppel exists to encourage reliance on prior, final adjudications. *Qualls*, 434 Mich at 357 n 30. Petitioners did not challenge the trial court's ruling in the condemnation action on direct appeal and it cannot be collaterally attacked now.

## E. RESPONDENTS' ARGUMENT IN SUPPLEMENTAL BRIEF

We also reject respondents' argument that any challenges are moot because the non-lakefront petitioners were not part of the drainage district and were not assessed, John Buchanan is the only lakefront property owner who wants to remain in the case, and John Buchanan suffered no liability in the creation or operation of the drainage district. Respondents' claims, however, are not supported by record evidence; it is impermissible to expand the record on appeal. *Reeves v K-Mart Corp*, 229 Mich App 466, 481 n 7; 582 NW2d 841 (1998). Furthermore, the completion of the project does not make it impossible for the trial court to grant relief. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) ("An issue is moot if an event has occurred that renders it impossible for the court to grant relief."). In their writ, petitioners requested a declaratory judgment that the designation and establishment of the drainage district was null and void, an injunction of all progress of the drainage district, as well as costs, interest, attorney fees, and other relief that the court deemed appropriate. Therefore, if the trier of fact found in favor of petitioners on the remaining issues, some relief could nevertheless be granted.

## III. REASSIGNMENT

In addition, petitioners argue that Judge Nichols was not properly assigned the case pursuant to an administrative order in Oakland County, 2013-02. Although that administrative order requires an order reassigning a case to be signed by the judge to whom the case will be reassigned, the judge transferring the case, and the chief judge, petitioners approved the form of an order signed only by the transferring judge. Therefore, any objection to the reassignment to Judge Nichols absent all three judges' signatures is waived. *Adair v Michigan*, 497 Mich 89, 104; 860 NW2d 93 (2014) ("Waiver is the intentional relinquishment of a known right"). Regardless, any error was harmless because the case was subsequently properly reassigned to Judge Nichols and Judge Nichols indicated on the record that his ruling on the motion for summary disposition would be the same regardless of any error.

Moreover, to the extent that petitioners argue that this issue involves subject-matter jurisdiction, we disagree. Again, subject-matter jurisdiction involves the authority of a court to hear and determine a class of cases, *Usitalo*, 299 Mich App at 228, not the authority of a particular judge within that court to try a particular case, see *Bean v State Land Office Bd*, 335 Mich 165, 174-175; 55 NW2d 779 (1952) ("The business of the courts is too important to the people of the State to permit formal details of the machinery of the designation of judges to control their jurisdiction."); *People v Phelps*, 261 Mich 45, 49; 245 NW 565 (1932) (selection of presiding judge "perfectly immaterial on the matter of jurisdiction"); *Armco Steel Corp v Dep't of Treasury*, 111 Mich App 426, 438-439; 315 NW2d 158 (1981) (an irregularity in the assignment of judges does not warrant reversal where no evidence suggests that the challenged assignment "was motivated by impermissible considerations").

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs are awarded. MCR 7.219(A).


/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood