# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELE R. MORGAN,

Plaintiff-Appellant/Cross-Appellee,

v

KERRY W. MORGAN,

Defendant-Appellee/Cross-
Appellant.

UNPUBLISHED
August 22, 2017

No. 331261
Genesee Circuit Court
Family Division
LC No. 13-309220-DM

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In this divorce action, plaintiff appeals and defendant cross-appeals. Both parties raise issues concerning the trial court's division of marital property, award of spousal support to defendant, and award of attorney fees to defendant. For the reasons provided below, we affirm in part, reverse in part, and remand.

When the parties married in 1990, defendant brought approximately $440,000 of assets into the marriage and plaintiff brought approximately $40,000. Defendant had a high school diploma and described himself as being self-employed. He was a licensed real estate broker, but he let his license lapse in October 2003. After the license lapsed, defendant continued to work as a real estate consultant.

In addition to his real estate dealings, defendant at one time owned a restaurant called Pumpernick's, which eventually closed. Defendant filed bankruptcy, which was finalized around 2005. Defendant testified that he owed back taxes to the IRS and the state of Michigan in the range of $100,000 to $150,000. Further, three creditors were not affected by the bankruptcy. Defendant claimed that his total debt at the time of the divorce proceedings was $500,000. Defendant explained that the way he tried to make money was to borrow against assets to get working capital and then turn that capital into money-making ventures.

At the time of trial, defendant last filed an income tax return in 2001. But he had all of the remaining tax returns prepared and ready for filing at the time of trial. For 2001 through 2006, defendant had no taxable income to speak of because his losses were so high. And his income over the last 5 years (2010-2014) averaged $12,438.20. But for the last three years (2012-2014), the average was only $2,972.

-1-

Plaintiff is employed as a financial advisor. She previously worked for Smith Barney, but in 2009, she moved as part of a team to UBS Financial Services. As part of the deal to move to UBS, plaintiff received over $542,308 in up-front money in the form of a loan, where one-ninth of the loan was forgiven each following year[1] as long as she remained with UBS. Additionally, if plaintiff was able to meet certain criteria, she could receive up to $367,542 in additional forgivable loans, which again would be forgiven over the course of her employment at UBS. Plaintiff ultimately earned all of the bonuses and therefore received $909,850 from UBS in the form of forgivable loans. In addition to these "loans," plaintiff also received her bi-monthly pay checks, i.e. "non-transitional income," which for the four years leading up to trial (2011-2014), averaged $155,219 per year.

Due to the significant income discrepancies, there was no real dispute at trial that defendant contributed very little to the household expenses in the last ten years.

Many issues in the divorce were settled before the trial concluded. However, the main issues the trial court had to resolve included how to value and divide plaintiff's book of business, how to divide her 401(k), how to address allegations that plaintiff dissipated vast sums of marital assets, and how to address the parties' requests for attorney fees.

The trial court valued the book of business at $587,500. Relying on the "concerted effort doctrine," the court awarded defendant 25% of the book's value, or $146,875. The court noted that defendant "contributed and sacrificed little to the Book of Business and this was not an equal concerted effort." With respect to plaintiff's 401(k),[2] the trial court awarded defendant one-half of its value of $125,000, or $62,500.

Regarding the dissipation of marital assets, the trial court found that plaintiff dissipated assets in the amount of $294,000. The court arrived at this total from her $247,000 in withdrawals from her IRA, the $17,000 she received from the sale of a Saab and a truck, and $30,000 she took from her 401(k) in the form of a loan. The court further found plaintiff's claim that she spent all of the money she received for household expenses was dubious. The court noted that in the five-and-one-half years since she made the move to UBS, she has received over $2,000,000 in money from all sources. When taking out the taxes paid during these years, "there is no way all the money had actually been spent" as plaintiff claimed. In brief, the court found that, in addition to the $294,000 mentioned earlier, plaintiff "depleted [other] marital assets so that [defendant] would receive very little." The court did not provide an explicit amount for this additional depletion and instead noted that "there is not sufficient evidence as to where the actual goods are that [plaintiff] purchased nor where all the cash withdrawals have gone, which were

---

[1] For tax purposes, the amount of any forgiven amount in a given year would be considered taxable income for that year. The result is that plaintiff received a large amount of money initially, but has to pay taxes on it spread out over the next nine years.

[2] In its final opinion/order and judgment, the trial court referred at times to the 401(k) as plaintiff's IRA. This was incorrect, as the record indicated (and the court acknowledged) that the IRA had been fully depleted by plaintiff.

numerous and frequent." In light of plaintiff's depletion of marital assets, the court awarded defendant the entire $294,000 from the IRA withdrawals, the proceeds from the sale of the two vehicles, and the 401(k) withdrawal/loan.

And with respect to the issue of attorney fees, the trial court noted that defendant owes over $100,000 in attorney and expert fees and found that pursuant to MCR 3.206(C)(2)(a), he "is unable to fully bear the expense of the action" and "[plaintiff] is able to pay." As a result, the court ordered plaintiff to pay defendant $70,000 in attorney fees.

## I. DIVISION OF MARITAL PROPERTY

We review a trial court's factual findings for clear error. *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* at 432-433. The trial court's dispositional rulings are discretionary and must be affirmed unless this Court is left with the firm conviction that it was inequitable. *Sands v Sands*, 442 Mich 30, 34; 497 NW2d 493 (1993).

The trial court in a divorce action must divide the marital property between the two parties to the divorce. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). Hence, in doing so, the court must first determine what property is marital property and what property is separate property. *Id.* "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id.* at 201. The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). The division need not be mathematically equal, but any significant departure from congruence must be clearly explained. *Id.* at 717. To reach an equitable division, the trial court should consider (1) the duration of the marriage, (2) the contribution of each party to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life status of the parties, (6) the necessities and circumstances of the parties, (7) each parties' earning ability, (8) the past relations and conduct of the parties, and (9) any other equitable circumstances. *McDougal v McDougal*, 451 Mich 80, 89; 545 NW2d 357 (1996); see also *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992). While a court must consider all relevant factors, it is not to assign a disproportionate weight to any one circumstance. *Berger*, 277 Mich App at 717.

Because the trial court did not consider the necessary factors in dividing the marital estate (e.g., the book of business, the 401(k), and the dissipated marital assets), a remand is necessary.

## A. BOOK OF BUSINESS

On appeal, plaintiff argues that the trial court's award of 25% of the value of her book of business to defendant was inequitable. On cross-appeal, defendant argues that it was inequitable to award only 25% of the value when 50% is the goal.

Here, the trial court found that plaintiff's book of business had a value of $587,500 and was a marital asset. Although, at trial, the parties differed greatly on what the value of the book of business should be,[3] notably, neither party challenges the court's *valuation* or its determination that the book is a marital asset on appeal. Instead, both parties argue that the court erred in how it *divided* the book of business between plaintiff and defendant. Hence, many of the complexities of this issue[4] are not implicated on appeal and we need not address them.

Once again, the governing principle "in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Id.* at 716-717. "The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from true congruence must be clearly explained." *Id.* at 717. Therefore, it is clear that the default position is that defendant would be awarded 50% of the value of the book of business. However, an evaluation of the property-distribution factors can alter the actual percentage to be awarded.

The trial court relied on *Postema v Postema*, 189 Mich App 89; 471 NW2d 912 (1991), which addressed how the value of a law degree was to be divided in a divorce. Although the trial court acknowledged that *Postema* was not on-point, it opined that the law degree obtained during the marriage in *Postema* was analogous to a spouse's book of business that was acquired during the marriage. The *Postema* Court noted that "a spouse who did not earn an advanced degree [is to] be compensated whenever the advanced degree is the end product of a *concerted family effort* involving mutual sacrifice and effort by both spouses." *Id.* at 94. The Court further explained that

> the concept of "concerted family effort" stresses the fact that it is not the existence of an advanced degree itself that gives rise to an equitable claim for compensation, but rather the fact of the degree being the end product of the mutual sacrifice, effort, and contribution of both parties as part of a larger, long-range plan intended to benefit the family as a whole. [*Id.* at 95.]

We find that the trial court's analogy is not pertinent. An advanced degree, like a law degree, is not an asset that can be sold.[5] On the other hand, a book of business is much different and can be sold or transferred. Instead, because the trial court found that the book of business is a marital asset, we have no reason to believe that it should be treated differently than any other marital asset. See *McNamara v McNamara*, 178 Mich App 382, 393; 443 NW2d 511 (1989)

---

[3] Plaintiff's expert opined that the book had no value, and defendant's expert opined that the book had a value of $964,000, not factoring in any of plaintiff's remaining loans with UBS.

[4] The complexities include how to value the book as a marital asset when it exists in the context of a team or partnership, where the two team members arguably agreed that if they ever parted, they were to only take the clients they personally brought to the team, even though they both worked with all of the clients. Adding to the complexity, there was evidence that plaintiff only was responsible for bringing approximately 10% of the clients into the team.

[5] Although a law firm or practice can be sold.

(holding that the defendant's law practice had value and that the trial court is to award one-half of its value to the plaintiff on remand). Again, generally, the difficulty arises in how to evaluate a book of business, but no such difficulty appears here. The question before us is how this asset is to be divided.

Here, the trial court appears to have relied primarily upon the concerted family effort doctrine as described in *Postema*. The only fact that the court used to rule that defendant should receive 25% of the value of plaintiff's book of business was that "[defendant] contributed and sacrificed little to the Book of Business and this was not a concerted effort." We do not disagree with the trial court's assessment; the record fully supports the view that defendant contributed very little, if anything, to allow plaintiff to acquire and grow her book of business. Defendant's claim that he was a stay-at-home dad and maintained the household is diminished by the fact that plaintiff hired a full-time nanny until the oldest child reached the age of 16. Further, there was evidence that in addition to a nanny, other household tasks were hired out, including house cleaning, lawn maintenance, and snow removal. While defendant certainly contributed "something" to the household, to equate his contributions to that of a "traditional" full-time, stay-at-home mother who is responsible for maintaining an entire household (with no nanny assisting) is specious.

In any event, this "lack of contribution" to the book of business would only be *one* relevant factor to consider. Specifically, this fact would seem to fall under factor (2) (the contribution of each party to the marital estate) and/or (9) (any other equitable circumstances). The trial court should have considered *all* of the pertinent property-division factors. Nowhere in its final opinion/order or in the judgment does the trial court refer to these factors.[6] Accordingly, we reverse the award of 25% of plaintiff's book of business to defendant and remand for the trial court to perform and place on the record the proper analysis. See *Sparks*, 440 Mich at 160 (holding that because the trial court fashioned a property division solely based on "fault," it did not consider all the relevant factors and a remand was necessary). This is not to say that the trial court cannot come up with the same 25% allocation, but any allocation must be done after a consideration of all relevant factors and not merely the fact that defendant contributed little to the book of business.

## B. 401(k)

The trial court awarded defendant one-half of the balance of plaintiff's 401(k). The court found that the 401(k) had a balance of approximately $125,000, which meant that defendant was awarded $62,500.

Although this was an equal division of a marital asset, the same problems that existed with respect to the division of the book of business exist here. The trial court did not refer to or rely on the property-distribution factors. Accordingly, we reverse the award of half of the 401(k)

---

[6] This omission is especially telling when the trial court did list and include the factors it must consider on the issue of spousal support.

to defendant and remand for the trial court to conduct a proper analysis and make a record of the same.

## C. DISSIPATED MARITAL ASSETS

Plaintiff argues that the trial court erred when it determined that certain withdrawals from her IRA and 401(k) constituted the "dissipation" of marital assets. Although we disagree, once again, a remand is necessary.

When dividing the marital estate between the parties, the first task of the trial court is to determine what the marital estate is. *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997); see also *Cunningham*, 289 Mich App at 201. However, "when a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets *may be included in the marital estate.*" *Woodington v Shokoohi*, 288 Mich App 352, 368; 792 NW2d 63 (2010) (emphasis added).

Here, the trial court found that plaintiff dissipated $294,000 of marital assets, plus an undetermined amount. The $294,000 amount was based on plaintiff withdrawing the entirety of her IRA (which totaled $247,000 in withdrawals), plus $17,000 from the sale of two vehicles and $30,000 from a loan she took from her 401(k). Also, the trial court was "satisfied that [plaintiff] depleted significant additional monies."[7] The court then awarded defendant the entirety of the $294,000 depleted assets.[8] Therefore defendant was awarded 100% of these marital assets that were dissipated.

We do not find persuasive plaintiff's claim that some of her withdrawals from her IRA and the 401(k) loan should not have been considered to be the dissipation of marital assets. Plaintiff asserts that the IRA withdrawal to pay Neil Helmkay $40,000 and the IRA withdrawals and 401(k) loan to pay (or invest) for their sons' college educations cannot be categorized as the dissipation of marital assets. Plaintiff's argument is misguided because the trial court implicitly found that plaintiff had other resources to pay these expenses without having to resort to the IRA or 401(k). Thus, the purpose for these withdrawals is not pertinent. Consequently, the trial court

---

[7] Although the trial court did not give a value to this amount of additional depletions, it cited in its opinion that during the five-and-one-half years since plaintiff made the transition to UBS, she has received over $2,000,000 in funds. When accounting for $200,000 spent on house remodeling and the taxes she had to pay during this time, "there is no way all the money had actually been spent," as plaintiff claimed. The trial court then cited favorably the exhibits that defendant provided, which demonstrated that there was approximately $760,000 to $1,000,000 in unaccounted funds.

[8] We note that in this section of the trial court's opinion, which addressed the dissipation of marital assets, the court awarded defendant one-half value of plaintiff's 401(k). Because the division of that marital asset was not related to the dissipation of assets, it probably should have been discussed elsewhere to avoid confusion.

finding that the entirety of the IRA withdrawals and the 401(k) loan were to be considered part of the marital estate is not clearly erroneous.

Regardless, we note that awarding defendant 100% of the dissipated assets normally would be incorrect because the fact that a party dissipated marital assets does not automatically mean that the other party is to receive *all* of those assets. Instead, the amount dissipated merely is considered part of the marital estate (although the funds are no longer present as they have been dissipated) where the goal is to divide the marital estate in an equitable fashion. Thus, an equitable division of these assets typically would be 50% (or $147,000) to defendant, not 100% (or $294,000).[9]

However, again, the trial court did not acknowledge any of the property-distribution factors. Indeed, the trial court did not provide any rationale for why defendant was to receive 100% of those dissipated marital assets. Thus, we do not know if the court erroneously thought that the non-offending party is to receive 100% of dissipated assets or if the court thought that $294,000 was equitable because it found that plaintiff dissipated at least $760,000. Accordingly, we reverse the award and remand for the court to consider the relevant factors. Furthermore, if the trial court on remand is to rely on an amount other than $294,000 for the amount of dissipated assets, then it needs to assign an actual value to that amount.

### D. CONFUSION IN THE JUDGMENT

Plaintiff also suggests that there is "confusion" in the judgment of divorce because it says in one part that defendant is awarded one-half the value of the 401(k)[10] but later provides that defendant receives the entire 401(k). We understand plaintiff's concern, but we see no issue. The trial court awarded defendant one-half of the non-dissipated 401(k), which results in $62,500. The trial court further ordered that plaintiff pay defendant $294,000 due to her dissipation of marital assets, for a total of $356,500 concerning these assets. To pay for this $356,500, defendant was to receive the full 401(k), which is approximately $125,000, plus the remaining $231,500 in cash. Thus, although defendant was awarded one-half of the 401(k), he was to receive the entire 401(k) to compensate for other marital assets. Although it could be somewhat confusing, the trial court's methodology and direction was clear.

However, there exists confusion with regard to the trial court's references to plaintiff's IRA when it should have referenced plaintiff's 401(k). Therefore, on remand, the trial court is to amend its judgment of divorce to accurately reflect that the IRA is indeed depleted and that the account with the $125,000 balance that is subject to property division is the 401(k).

### II. SPOUSAL SUPPORT/HEALTH INSURANCE

---

[9] However, if the trial court relied on the fact that plaintiff dissipated at least $760,000, the percentage awarded to defendant would be closer to 50%.

[10] Again, the trial court technically referred to plaintiff's IRA, but in actuality, it meant the 401(k) because it knew that the IRA was already depleted and had nothing left.

Plaintiff argues that the trial court erred when it awarded spousal support to defendant, and on cross-appeal, defendant argues that the trial court should have awarded more. Defendant further argues that the court erred when it only ordered plaintiff to pay for one year of defendant's health insurance when she was required to pay for two years of spousal support.

A trial court's factual findings are reviewed for clear error. *Gates*, 256 Mich App at 432. A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* at 432-433. The trial court's dispositional ruling regarding spousal support is discretionary and the must be affirmed unless this Court is left with the firm conviction that it was inequitable. *Berger*, 277 Mich App at 727.

"The main objective of alimony is to balance the incomes and needs of the parties in a way that will not impoverish either party. Alimony is to be based on what is just and reasonable under the circumstances of the case." *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000) (citations omitted). When making this determination, a trial court should consider the following factors:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the ability of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Berger*, 277 Mich App at 726-727.]

Here, the trial court based its award after a review of these 14 factors. Notably, the court found that both parties cared for the children and both contributed to the marital estate, with defendant contributing more in the early portion of the marriage and plaintiff contributing more during the latter portion. In its final analysis, the trial court stated:

> The bottom line is that this is a 25 year marriage in which [plaintiff] has proven herself to be a successful, licensed analyst. Her employment appears to be secure. [Defendant] has always been self-employed, needs to renew his real estate license, and needs capital to continue his self-employment. With a good work ethic, he "may" become financially successful once again, however he will need additional time.

As a result, the trial court ordered plaintiff to pay defendant spousal support in the amount of $1,500 per month for 24 months, with defendant having the option to petition the court before the end of the 24-month period to request further spousal support, if needed.

In her brief on appeal, plaintiff does not identify any errors in the court's particular factual findings. Instead, her argument is that the court simply selected the wrong result when it awarded the spousal support. Defendant, in his brief on cross-appeal, similarly does not

challenge any specific court finding and instead argues that due to equitable principles, the trial court should have awarded permanent spousal support.

We do not have a firm conviction that the trial court's award of 24 months of spousal support to defendant was inequitable. The court found, and neither party challenges, that plaintiff has a yearly income of $160,000 and defendant has an income of $45,600 for purposes of spousal support. And although $1,500 per month may seem like a small amount in light of the income disparity, it is important to note that defendant was to receive two billboards as part of the parties' agreement, with one immediately providing income of $2,500 per month, and the other having the potential to generate $1,300 per month. The trial court also stressed that defendant was capable of working and earning an income, but he needed time to reacquire his real estate broker license and time to acquire working capital to fund his real estate endeavors. In light of these concerns, the trial court's decision to grant a modest $1,500 per month for 24 months appears to be fair and equitable. Further, the fact that the court allowed defendant to petition the court to extend or modify the spousal support was a very reasonable way to ensure that defendant would not be left impoverished at the end of the two-year period. Consequently, we hold that the trial court did not abuse its discretion in the grant of 24 months of spousal support.

On cross-appeal, defendant also argues that it was erroneous for the court to order plaintiff to pay for only one year of health insurance. This is a much closer question, but in light of the court's other property rulings, we cannot say that this amounts to an abuse of discretion.

III. ATTORNEY FEES

Plaintiff argues that the trial court erred when it awarded any attorney fees to defendant, and defendant argues that the trial court should have ordered plaintiff to pay the entirety of his legal fees instead of a portion. We review a trial court's decision to award attorney fees for an abuse of discretion. *Stoudemire v Stoudemire*, 248 Mich App 325, 344; 639 NW2d 274 (2001). But the trial court's factual findings are reviewed for clear error. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005).

A party to a divorce action is not entitled to attorney fees as of right. *Id.* But under MCL 552.13 and MCR 3.206(C), attorney fees may be awarded "when a party needs financial assistance to prosecute or defend the suit." *Id.* MCR 3.206(C)(2)(a) provides that in order to successfully request attorney fees, a party must show that he is unable to bear the expense of the action and that the other party is able to pay. Here, the trial court relied on and cited MCR 3.206(C)(2)(a) and found that "[Defendant] is unable to fully bear the expense of the action and that [plaintiff] is able to pay."

On appeal, plaintiff argues that the trial court erred when it awarded attorney fees to defendant because the court failed to conduct a hearing on the reasonableness of the fees. Plaintiff reliance on *Reed* is misplaced. In *Reed*, the trial court did not rely on one party's need and the other party's ability to pay; instead, the trial court awarded the defendant attorney fees under the common law, which allows for the imposition of attorney fees when such fees were incurred as a result of the other party's unreasonable conduct in the course of the litigation. *Reed*, 265 Mich App at 164-165. The *Reed* Court noted that "[the] plaintiff submitted no

evidence regarding what fees were actually incurred because of [the] defendant's misconduct, and the trial court made no finding in that regard or concerning the reasonableness of the fees incurred because of misconduct." *Id.* at 166. Hence, the trial court in *Reed* abused its discretion when it awarded attorney fees based on one party's misconduct causing the other party to incur attorney fees, when the court did not make any findings that connected any particular fees to any misconduct. Here, no such findings were required because, while the trial court earlier referenced that plaintiff's misconduct outweighed that of defendant's during the litigation, the court's opinion makes it clear that it awarded attorney fees solely on the basis of need. The court explained:

> While attorney fees are not recoverable as of right in divorce actions, they may be awarded when a party needs financial assistance to prosecute or defend[] the suit. It is well settled that a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support. In this case, [plaintiff] enjoys a comparatively substantial income advantage over [defendant].

> From the evidence presented, [defendant] has claimed miscellaneous debts of over $250,000, estimated IRS and state taxes of about $150,000, and legal and expert witness fees owing pursuant to these divorce proceedings in the amount of $104,000.

> The court is satisfied pursuant to MCR 3.206(C)(2)(a) that [defendant] is unable to fully bear the expense of the action and that [plaintiff] is able to pay.

Therefore, plaintiff's argument that the trial court erred when it failed to make any findings related to the reasonableness of the fees is not persuasive. We also note that in plaintiff's reply to defendant's post trial-brief, wherein defendant spelled out his request for attorney fees, plaintiff never contested the reasonableness of the amounts that were purportedly owed. Thus, there was no need for the trial court to conduct a hearing on the reasonableness when the reasonableness was not challenged. See *Miller v Meijer, Inc*, 219 Mich App 476, 480; 556 NW2d 890 (1996) (stating that a hearing on reasonableness of attorney fees is only needed when the reasonableness of the fees is challenged). Additionally, when a trial court has sufficient evidence to determine the amount of attorney fees, no evidentiary hearing is required. *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 171; 712 NW2d 731 (2005). Defendant submitted a breakdown of his $104,000 in attorney and expert fees to the trial court. Accordingly, plaintiff has failed to show that the trial court abused its discretion.

On cross-appeal, defendant argues that he should have been awarded the entirely of his attorney fees instead of only $70,000. The trial court found that defendant owed at least $104,000 in attorney and expert fees. Consequently, the court implicitly found that defendant could afford to pay in excess of $24,000 in attorney fees. Because defendant received the billboard income ($30,000 per year immediately and potential for $15,600 more per year),

spousal support ($18,000 per year for two years), and over $500,000[11] in liquid assets from property distribution, we are not convinced that the trial court erred. Though defendant has a tremendous amount of additional debt, requiring him to pay for some of his attorney fees in these circumstances is not an abuse of discretion.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs, as neither party prevailed in full.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

---

[11] $53,000 (from stipulation of house and associated property) + $294,000 (dissipation of assets) + $146,875 (book of business share) + $62,500 (401(k) share) = $556,375.

Of course, because we are reversing the trial court's present award of $294,000 for the dissipation of assets, the $146,875 award for the book of business, and the $62,500 award for the 401(k), the trial court is going to re-evaluate how much of these amounts defendant is to receive in property distribution. Thus, the amount defendant is to receive could go up or down on remand. If it goes down significantly from what the trial court initially determined, then the trial court is to re-examine whether the $70,000 it awarded to defendant in attorney fees is sufficient under the new circumstances.